------&lt;◂●●▸▸------

)

## JACOB D. SHEWALTER *v*. DAVID FORD.

1. PLEADING: CROSS-ACTION: SET-OFF.—The defendant cannot deny, *in toto*, the plaintiff's right of action, and, at the same time, set up in his answer a substantive and independent cause of action, inconsistent with the plaintiff's claim, and involving the issue of its justice and legality, and which, of itself, amounts to an assertion that the plaintiff's demand is ill-founded; and hence, when the plaintiff brought an action to recover damages, as for a total of loss of the chattel, occasioned by a breach of the defendant's warranty of soundness, the latter cannot deny the breach of the warranty, and, at the same time, demand a judgment against the plaintiff for the purchase-money.

2. WARRANTY OF SOUNDNESS: WHAT A BREACH OF.—Every species of unsoundness, which causes damage to the purchaser, whether by total loss of the property, or by imposing a necessity to incur expenses to a partial extent, is a breach of a warranty of soundness.

3. SAME.—The purchaser of a slave, with warranty of soundness, will be entitled to recover of the vendor as for a total loss, if the slave be, at the time of the warranty, laboring under a disease, which, though not mortal in its character, yet conduces to and results in a disease, which afterwards proves mortal.

4. SAME: THE RULE IN RELATION TO OBVIOUS DEFECTS EXPLAINED.—The rule, which excludes from a general warranty of soundness, obvious defects, applies to such imperfections only as are plain and palpable, and cannot but be perceived and understood to their full extent by the purchaser; such as the want of a leg, an arm, or an eye, &c. It does not extend to a case where, though the purchaser was aware of the existence of disease, yet its precise character not being obvious to the senses, its extent was uncertain and unknown. See *Shillitoe* v. *Claridge*, 2 Chitty Rep. 425 (18 Eng. C. L. R. 386).

Shewalter *v.* Ford.

IN error from the Circuit Court of Hinds county. Hon. John Watts, judge.

In addition to the very full statement of the case, found in the opinion of this court, it is only necessary to state that the judgment in the court below was for the plaintiff for $360; being the amount of the purchase-money which he had paid and interest, and also the amount of expenses which he had incurred by reason of the sickness of the slave.

*John D. Freeman,* for plaintiff in error,

Cited 2 Esp. R. 673; 2 Chitty R. 451; 1 Stark. 127; 2 Saund. Pl. and Ev. 915; Chitty on Cont. 455, 464; Law of Slavery, 127.

*Johnston* and *Shelton,* for defendant in error.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendant in error, to recover the sum of three hundred dollars, paid by him to the plaintiff in error, in part for the purchase-money of a slave, which the plaintiff in error warranted to be sound, but which died shortly after the purchase, from disease existing at the time of the purchase, and also for expenses incurred on account of medical attendance upon the slave.

The declaration alleges that the slave was purchased for the sum of one thousand and fifty dollars, of which the defendant in error paid the sum of $300, at the time of the purchase, in cash, and executed his note for the residue, $750, which was unpaid when the suit was brought.

The defendant below denied the alleged unsoundness of the slave at the time of the sale, and filed, with his answer, the note for $750, and demanded judgment thereon against the plaintiff. When the case was called for trial, there being no replication to the claim upon the note for $750, the defendant moved for judgment, by default, against the plaintiff, which the court refused to allow. And this is the first ground of error to be noticed.

It is manifest that there was nothing in the answer requiring a replication. The fact of the execution of the note set up in the

answer was distinctly stated in the declaration, as a part of the history of the purchase of the slave; and the claim set up in the answer could be regarded in but one of two lights, either as a set-off, or as a cross-action. It is plain that it cannot be considered as a set-off, because it is based upon a total denial of the plaintiff's right of action, and has no feature of a claim for an allowance against the sum which the plaintiff might recover; and if it could be regarded as a set-off, under our laws upon the subject, it required no replication. If it be regarded as a cross-action to recover the amount of the note, as was clearly its object, it could not be entertained; for, under no rule of practice, known to our laws, can a defendant be permitted, in a case like this, to deny, *in toto*, the plaintiff's right of action, and, at the same time, to set up a substantive and independent cause of action, inconsistent with the plaintiff's claim, and involving the issue, of whether the plaintiff's demand is well-founded or not, and demand judgment, upon the ground that the plaintiff's claim is ill-founded. Hence, the court acted properly in disregarding this part of the defendant's answer as immaterial.

The next ground of objection is, that the testimony did not warrant the jury in finding that the slave was unsound at the time of the sale.

It appears that the slave was purchased on the 5th January, 1856. A witness, who was present at the time of the purchase, testified that the slave had a hacking cough at the time, and appeared to him like an unhealthy person, and he asked the defendant in error if he had had her examined by a physician, to which he replied, in substance, that he had not, because he relied on the warranty of the vendor. Another witness testified that, on the first or second day after the purchase, the slave was brought to his house, and was then evidently sick of a cold, and laboring under a coarse, deep-toned cough; that she remained at witness's house for about twelve days, being employed about the house and not exposed, and was taken away by the purchaser. About the 26th January, 1856, he saw her at the purchaser's house, in bed, and quite sick, but she was in comfortable quarters, and well nursed, being attended from that time by a regular physician, until 1st February, when she died. The weather, during the time, was cold, rainy,

and unhealthy, and there was much sickness in the neighborhood, but no other case of pneumonia among witness's slaves.

The attending physician testified that he was called to see the woman on the 27th January, 1856, and found her sick of pneumonia, of which she died on the 1st February. He was of the opinion, from the examination he made of her, that the disease of which she died supervened an attack of chronic bronchitis, which must have existed some five or six weeks before he was called to see her, perhaps a somewhat less time; that both pneumonia and bronchitis originate in cold in the lungs and throat, and produce coughing; but the former is an acute disease, which runs its course in from four to ten days, and the latter is not considered a mortal disease, and never produces sudden death, but readily yields to proper treatment in its early stages; that the bronchial affection did not necessarily produce pneumonia, but may have rendered the patient more liable to an attack of pneumonia than she would have been without it. He further testified that the slave had all necessary care and attention.

On the part of the defendant below, a witness, Morris, testified that he knew the slave from September, 1855, when she was purchased by the defendant, in Virginia, until she was sold to the plaintiff, in January, 1856, having been with her, and having charge of her as agent of defendant, and that he never knew her to complain of sickness, and thought her one of the healthiest slaves he ever knew, and considered her so when she was sold to plaintiff. He further testified that, about three weeks after the sale, plaintiff came to defendant's house, in Jackson, and expressed himself highly pleased with his bargain,—this was when the note, for the balance of the purchase-money, became due.

The defendant also introduced Dr. Baird, who testified to about the same characteristics of the diseases of pneumonia and bronchitis as stated by the attending physician, and that pre-existing bronchitis might be conducive to pneumonia, but would not of itself produce pneumonia.

The plaintiff then introduced the first witness examined by him, whose testimony tended to disprove the statements of the witness Morris, and to show that the plaintiff was not in Jackson, after the purchase of the slave, until her death.

The question upon this evidence is, whether the slave was unsound at the time of the purchase, and in consequence of which she died.

It is clear, from the testimony, that she died of pneumonia, and that she was not laboring under that specific disease at the time of the purchase. But it is shown that she then had a cough and looked unhealthy, which on the next day, or day following, had progressed to a deep-toned cough, of which she was evidently sick, and that this continued until it terminated in pneumonia, of which she died. The testimony of the physicians was sufficient to warrant the jury in coming to the conclusion, that the cough and cold under which she was laboring at the time of the sale, conduced to the disease of pneumonia, and resulted in it. Under such circumstances could it be said that she was sound at the time of sale ? We think not. She was certainly laboring under a disease at that time, which though specifically not mortal, in all probability, from the evidence, resulted in the disease of which she died, and was the cause of it. For it appears that, notwithstanding she received all proper care and attention, and was not subjected to exposure, the cough increased from the day of the purchase until it became a confirmed case of pneumonia. It is not necessary to constitute a breach of warranty of soundness, that the slave be laboring at the time of the warranty under the disease which afterwards proves mortal; but it is sufficient to render a party liable upon his warranty, if the slave be at the time laboring under a disease which though not mortal in its character, is a specific disease, and conduces to, and results in, a disease that proves mortal.

Nor is it necessary that the disease existing at the time of sale should prove mortal, in order to create a liability on the warranty. It is one thing whether there was unsoundness at the time of sale, and quite another thing what damage the purchaser has sustained in consequence of the unsoundness. And in this case, if it had become necessary for the purchaser to incur heavy medical bills in consequence of the disease of *bronchitis*, under which it is probable the slave was laboring at the time of the sale, it is clear that the vendor would have been liable therefor, upon his warranty. For the warranty extends to all unsoundness which causes damage to the purchaser, whether by total loss of the property purchased, or

by being compelled to sustain loss or incur expenses to a partial extent by reason of the unsoundness.

But it is said that the purchaser is entitled to nothing upon the warranty, because he knew of the unsoundness which existed at the time he purchased, and therefore that the case comes within the principle of a plain and obvious defect, to which a general warranty does not extend.

The rule, however, in relation to obvious defects, applies to such imperfections as are plain and palpable, and cannot but be perceived and understood to their full extent by the purchaser, such as the want of a leg, or an arm, or a hand by a slave, or a tail or an ear by a horse; and the reason of it is, that as the purchaser could not reasonably fail to perceive such a defect and to understand its full extent, he must be presumed to have purchased with reference to it, and to have waived any warranty on account of it. But the unsoundness here is not of that nature. It is a malady in the system, not palpable to the senses, and uncertain in its extent and as to its results. And it is immaterial that the purchaser was aware that the slave was laboring under disease. The extent and precise character of it not being obvious, he had the right, in making the purchase, to protect himself against loss, by reason of its existence then, or its subsequent progress, by warranty from the vendor, and not to rely upon his own knowledge or see fit to obtain other advice. *Shillitoe* v. *Claridge*, 2 Chitty Rep. 425 (18 Eng. C. L. Rep. 386). And it appears that this is the course he purposely pursued in this transaction.

The instructions given by the court to the jury are in accordance with these views, and we think that the evidence was sufficient to warrant the jury in finding that the slave was laboring under a disease at the time of sale which resulted in her death.

It is insisted, however, that the testimony of the witness Morris shows fully and circumstantially that the slave could not have been the subject of any disease at the time of sale. The testimony of that witness is directly in conflict with the testimony of the plaintiff's first witness, Thomas Ford, who testifies positively that she was laboring under a cough and looked unhealthy at the time of sale, which attracted his attention. He further states facts tending to contradict the statement of Morris, that the plaintiff, after the

purchase, expressed himself much pleased with the slave. And still another circumstance appears, calculated to discredit the witness Morris. He states that this declaration of the plaintiff's satisfaction with his purchase, was made about three weeks after the sale, and when the note for the payment of the residue of the purchase-money became due. It appears by the record that the note was due on its face on the 1st February, and the testimony shows that for six or eight days before that the slave had been dangerously ill of *pneumonia*, and that she died on that day. It is, therefore, not probable that this statement can be true.

At all events, there was conflict between the witnesses as to the fact of soundness on the day of the sale, and it was the province of the jury to determine to which of them they would give credit.

Let the judgment be affirmed.