HENRY O. HOUGHTON & others *vs.* WATERTOWN FIRE
INSURANCE COMPANY.

Suffolk.    March 3. — June 29, 1881.    ENDICOTT & DEVENS, JJ., absent.

In an action on a policy of insurance on " stereotype, electrotype and steel plates and cuts," the issue was whether brass plates cut with designs and letters, and used for making impressions on the covers of books, were " cuts " within the meaning of this term in the policy. *Held,* that the defendant was entitled to a ruling that, if the word " cuts " had, among persons in the trade in which the plaintiff was engaged, a technical meaning universally so understood, the jury might presume that such was its meaning in the policy.

CONTRACT on a policy of insurance against fire upon " stereotype, electrotype and steel plates and cuts." Trial in the Superior Court, before *Pitman,* J., who allowed a bill of exceptions, in substance as follows:

It was admitted that the plaintiffs were entitled to recover, if the articles consumed by the fire were covered by the policy. The plaintiffs contended that the articles were properly included in the term " cuts." The defendant contended that they were " dies," and not " cuts."

The plaintiffs were book publishers in Boston, and the articles insured constituted a part of their stock in trade, and were used only by publishers and bookbinders. They were brass plates cut with designs and letters by a graver, and used in a press for making impressions on the covers of books, sometimes with gold-leaf and sometimes with ink, and also for printing, with ink, the paper wrappers. The plaintiffs relied upon the natural and ordinary meaning of the word " cuts," as defined in the standard dictionaries and used in the common speech of people. The defendant contended that the word " cuts " was understood among book publishers, engravers and all other persons who used dies and cuts, to include only wood-cuts and steel engravings and

plates, and did not include the articles which were consumed, which are known as dies. The defendant called several witnesses, — publishers, binders and engravers, — who testified that these articles were brass dies, and were properly so called and known in the trade; and all but one of whom testified that they had never heard them called anything else. The exception was an engraver, who testified that he had sometimes heard them called brass cuts by customers. There was no evidence by the plaintiffs to control or modify this, except that a witness for the plaintiffs, who was a die-sinker and engraver, testified that the common name is die; "that is technical, but persons not acquainted come in and ask for a cut; have heard publishers call them so, but not when long in the business." And one of the plaintiffs, who had been a printer and publisher for many years, testified, on cross-examination, that he should call the articles brass dies, but that he thought he had heard them called "cuts," though he could not recall by whom. The plaintiffs admitted that the articles were "dies," and were generally so called by persons engaged in the above callings, but contended that they were included in the generic term "cuts."

The defendant asked the judge to instruct the jury that, if they should find that the word "cuts" had among book publishers a technical meaning universally so understood among book publishers and the makers and users of cuts and dies, the jury may presume that the word was used in that sense in the policy. The judge declined to give this instruction, and, without giving any more specific instructions as to the burden of proof or the presumption as to the sense in which the word was to be interpreted in this case, instructed the jury upon this point as follows: "Words are to be understood in their plain, ordinary and popular sense, unless they have, in respect to the subject matter, as by the known usage of the trade or the like, acquired a particular sense, distinct from the popular sense of the same words. Where a word has both a popular and a technical sense, or where it has several different meanings, it is a question of fact for the jury to determine, from the subject matter, the contract, the character of the contracting parties, or the nature of the contract and all the surrounding circumstances, in which sense the word was used by the contracting parties."

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*G. A. Torrey*, for the defendant.

*C. Allen*, (*J. Fox* with him,) for the plaintiffs.

LORD, J. The argument of the plaintiffs has been directed principally to the question whether the articles destroyed were the articles insured. That is a question of fact, and a question for the jury, who have decided it. The question properly before us is one of law, and is, Did the jury decide the question of fact under proper instructions in matter of law?

Upon this question we can have no doubt. It is entirely clear that the instruction asked for by the defendant should have been given. If other or further instructions were necessary, they were not of the nature of those actually given; nor were the instructions, as given, accurate. We do not mean that any particular words which were used by the presiding judge might not properly be used, but that the entire instructions failed to lay down the true rule by which the jury should be guided.

The proposition is undoubtedly true, that " Words are to be understood in their plain, ordinary and popular sense, unless they have, in respect to the subject matter, as by the known usage of the trade or the like, acquired a particular sense, distinct from the popular sense of the same words; " and it is equally true, that " Where a word has both a popular and a technical sense, or where it has several different meanings, it is a question of fact for the jury to determine, from the subject matter, the contract, the character of the contracting parties, or the nature of the contract and all the surrounding circumstances, in which sense the word was used by the contracting parties," if the word " character " is properly defined and explained to the jury, and if the disjunctive " or " is construed as " and." Assuming every word of the instructions, as given, to be correct, we are to remember that the presiding judge had been asked to give a specific instruction which the party was entitled to have given, and to which the instructions do not allude. The jury were told, in substance, that, if words had no technical meaning, they were to be construed according to their ordinary and usual meaning. They were told that, if words had both a technical meaning and an ordinary meaning, the jury should determine in which sense

they were used, with nothing but their own judgments to guide them in such determination.   This was error.   The rule of law in relation to the construction of contracts is correctly stated by Chief Justice Shaw in *Daniels* v. *Hudson River Ins. Co.* 12 Cush. 416, 430.   "The general rule on that subject is, that if any person, or any company, foreign or domestic, shall engage in any branch or department of business, they must be presumed to be acquainted with the rules and usages of such business, to be conversant with the language employed in it, whether strictly technical or not."   "If, therefore, the language of this representation was understood in a particular manner by manufacturers, according to which understanding the representation was true," "the legal presumption is that it was so understood by the insurers in their contract."   See also *Whitmarsh* v. *Conway Ins. Co.* 16 Gray, 359.

Upon this subject, the decisions of courts in various jurisdictions seem to be uniform, and to result in this: that the jury should be instructed that when words have acquired an exact and technical meaning in any trade or business, and are used in a contract relating to such trade or business, *prima facie* they are to be construed in the meaning or sense which they have acquired in that business. *Taylor* v. *Briggs*, 2 C. & P. 525. *Norden Steamship Co.* v. *Dempsey*, 1 C. P. D. 654.   *Lowry* v. *Russell*, 8 Pick. 360.   *Sawtelle* v. *Drew*, 122 Mass. 228.   *Heald* v. *Cooper*, 8 Maine, 32.   *Thompson* v. *Sloan*, 23 Wend. 71.   *Dalton* v. *Daniels*, 2 Hilt. 472.   *Wayne* v. *Steamboat General Pike*, 16 Ohio, 421.   *Doane* v. *Dunham*, 79 Ill. 131.   *Pilmer* v. *State Bank*, 16 Iowa, 321.   *Appleman* v. *Fisher*, 34 Md. 540.   *Carter* v. *Philadelphia Coal Co.* 77 Penn. St. 286.

*Exceptions sustained.*