Long Bros., Respondents, v. The J. K. Armsby Co., Appellant.

**Kansas City Court of Appeals, January 5, 1891.**

1. **Pleading** : WARRANTY EXPRESSED OR IMPLIED : SAMPLE OR DESCRIPTION. The rule of pleading requires that matters should be pleaded according to their legal effect, and general allegations of warranty are sufficient, without stating whether it is expressed or implied ; and though the warranty be implied by law, yet when the implication arises from a statement made, whether by a description or sample exhibited, it is an express warranty.

2.  **Evidence**: MEANING OF COMMERCIAL TERMS: "STRICTLY CHOICE" IN APPLE TRADE. In an action involving a warranty of certain evaporated apples, it is competent to admit evidence tending to show: *First.* That the parties entered into a contract in which the term "strictly choice" was used; *second,* that this term had acquired by the usage of the Kansas City apple trade a well-known and defined meaning; that it had become a trade term having a special signification well known in the city where the contract was made; *third,* to explain to the court the meaning of this technicality.

3.  ———: CONTRACTS: CUSTOM AND USAGE AS TO COMMERCIAL MEANING. Parties must be taken to have contracted with reference to the custom or usage of their trade or the locality where the contract is made; and evidence is admissible to explain the mercantile and trade meaning of the language employed, and to make known usages which prevail as to the subject-matter of the contracts to whose terms incidents may be thereby annexed, provided they are not repugnant to or inconsistent with them; and parties engaged in a particular trade and who use a mercantile term having a fixed meaning in the trade are conclusively bound to use it in that sense; but evidence that by a local usage a term possesses special commercial sense is inadmissible when both parties to the contract in which the term is employed are not of the same trade.

4.  **Warranty**: SALE BY DESCRIPTION: INSPECTION: QUESTION FOR JURY: INSTRUCTIONS. A sale by description imparts a warranty that the property sold is of that description, and whether the vendee is able to inspect them or not, it is an implied term of the contract that the goods shall reasonably answer such description, and, if they do not, it is unnecessary to put any other question to the jury. The action of the trial court in giving and refusing instructions in this case approved.

5.  **Evidence**: USAGE ELSEWHERE. The contract being a Kansas City contract, evidence of usage outside of that city was immaterial and properly excluded.

6.  **Trial Practice**: GENERAL VERDICT: ONE CAUSE OF ACTION, TWO COUNTS. The objection of a general verdict does not apply where there are two counts on one cause of action.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Lathrop, Smith & Morrow,* for appellant.

(1) The questions as to local usage in Kansas City then on this branch are : *First.* Did any local usage exist in this respect ? *Second.* Was the existence, duration and practice of such usage such as to prove a local custom. *Third.* If the usage sufficiently existed to so prove a local custom, can such local custom bind defendant without knowledge of it ? . *Fourth.* Is not such knowledge an issuable fact, to be proved by evidence ? (2) The evidence of plaintiffs is not sufficient to prove any custom, local or otherwise. Not a single witness was able to do more than to say what he did, and was not able to say what any other house or person did. *Beirne v. Lord,* 1 Seld. 95, 99–105 ; *Bank v. Bank,* 17 Am. Rep. 305–309. (3) None of the witnesses pretended to say how long the alleged custom had existed. No time of its existence was even mentioned. It was not proved to be uniform. (4) If there was any such local usage as contended for, it was purely local. Defendant never heard of it. As a local usage it would not bind defendant unless knowledge of it was brought home to it, at or before the sale, and was also proved to be uniform. *Adams v. Ins. Co.,* 17 Fed. Rep. 630, 652, 653 ; *Wall v. Bailey,* 49 N. Y. (4 Sickles) 464, 473 ; *Bradley v. Wheeler,* 44 N. Y. 495, 500 ; *Weyand v. Railroad,* 39 N. W. Rep. 899, 903, and cases cited ; *Higgins v. Moore,* 34 N. Y. 425 ; *Dawson v. Kittle,* 4 Hill (N. Y.) 107 ; *Wheeler v. Newbould,* 5 Duer, 29, 31 ; *Martin v. Maynard,* 16 N. H. 166 ; *Doge v. Favor,* 15 Gray, 82 ; *Fisher v. Sargent,* 10 Cush. 250 ; *Stevens v. Reeves,* 9 Pick. 200. (5) In the absence of the local custom claimed there would be no warranty. In the sale of personal property there is no warranty as to quality, unless an express warranty be given, or unless fraud has been practiced. Declarations and statements of quality are not warranties.

*Lindsay v. Davis*, 30 Mo. 406, 409 and 410 ; *Gatchet v. Warren*, 72 Ala. 292 ; *Eagan v. Call*, 34 Pa. St. 236 ; *Shisler v. Baxter*, 109 Pa. St. 443 ; *Soper v. Breckenridge*, 4 Mo. 14, 15 ; *Matlock v. Meyers*, 64 Mo. 531, 532 ; Benj. on Sales [4 Am. Ed.] sec. 965, and cases cited ; *Lindsay v. Davis*, 30 Mo. 406, 410 ; *Towell v. Gatewood*, 2 Scam. (Ill.) 22, 25 ; *Wetherill v. Neilson*, 20 Pa. St. 448, 453 ; *Bragg v. Merrill*, 49 Vt. 45, 46 and 47 ; *Wetherill v. Neilson*, 8 Harris, 448, 452 and 453 ; *Whitaker v. Tastwick*, 25 P. F. Smith (Pa.) 229, 231 and 232 ; *Fraley v. Bispham*, 10 Barr, 320, 325 ; *McFarland v. Newman*, 9 Watts, 55, 56. (6) If we are correct in our analysis of plaintiffs' petition, then all plaintiffs' instructions on the matter of implied warranty are erroneous, because there is pleaded only express warranty. (7) The verdict rendered was a general one. The petition contained two counts. The verdict should have specified on which count the finding was made. *Bricker v. Railroad*, 83 Mo. 391 ; *Sturgeon v. Railroad*, 65 Mo. 569.

*Karnes, Holmes & Krauthoff*, for respondents

(1) As some question is made on the form of the petition, it is well enough to note in the outset, that it conforms to the rule laid down by an eminent judge and recognized in the books, that "it is not necessary in pleading, where a party relies upon a mere general warranty of the quality of the goods sold, to state whether the warranty is express or implied. A general averment that the vendor warranted the goods to be of a good quality is sufficient. Proof of warranty of either kind will support the averment." *Hoe v. Sanborn*, 21 N. Y. 352; 1 Smith L. C. [9 Am. Ed. ] p. 329 ; *Hawkins v. Pemberton*, 51 N. Y. 198, 204. (2) The principal contention of the defendant "at this stage" is upon the admissibility of the plaintiffs' evidence as to the definition and meaning of the term, "strictly

choice," and as to the usual practice in the Kansas City market to sell evaporated fruit by description. The former testimony bears on the construction of the contract made, and the latter upon Seavey's authority to make it. The question should, therefore, be divided. Jones on Commercial Contracts, secs. 61, 96, note 2; 104, note 2; Elphinstone on Interpretation of Deeds, p. 9; 1 Greenl. Ev. [14 Ed.] sec. 292; *Carter v. Coal Co.*, 77 Pa. St. 286, 290; *Fertilizer Co. v. White*, 66 Md. 444, 454; *Whitmore v. Coats*, 14 Mo. 9, 15, 16; *Kimball v. Brawner*, 47 Mo. 398, 400; *Mixer v. Coburn*, 11 Met. 559, 562; *Dana v. Fiedler*, 12 N. Y 40, 46; *Cooper v. Kane*, 19 Wend. 386; *Sumner v. Tyson*, 20 N. H. 384; *Love v. Miller*, 10 S. E. Rep. 685; *Smith v. Wilson*, 3 Barn. & Ad. 728; *Hutchison v. Bowker*, 5 M. & W. 535, 540, 542; *Randall v. Newson*, L. R. 2 Q. B. Div. 102, 109; *Buckle v. Knoop*, L. R. 2 Ex. 125, 129; *Goodwin v. Robarts*, L. R. 10 Ex. at 346; *Hudson v. Ede*, L. R. 3 Q. B. 412, 415; *Pollen v. Le Roy*, 10 Bosw. 38, 50; *Pollen v. Le Roy*, 30 N. Y. 549, 561; *Appleman v. Fisher*, 34 Md. 540, 550, 552; *Durant v. Burt*, 98 Mass. 161, 168; *Robinson v. United States*, 13 Wall. 363, 365, 366; *Lowe v. Lehman*, 15 Oh. St. 179, 184; *Hatch v. Douglass*, 48 Conn. 116, 128, 129; *Houghton v. Watertown*, 131 Mass. 300, 302, 303; *Gleason v. Walsh*, 42 Me. 397, 399; *Jones v. Clarke*, 2 Hurlst. & N. 725, 727; *Cothran v. Ellis*, 107 Ill. 413, 419; *Tallcott v. Smith*, 142 Mass. 542, 544; *Walls v. Bailey*, 49 N. Y. 464, 473; *Fatman v. Thompson*, 2 Disney, 482, 484; *Wallace v. Bradshaw*, 6 Dana, 382, 384, 385; Jones Com. Cont., sec. 63, p. 100, note 3; sec. 111, note 1; sec. 112; *DeForest v. Ins. Co.*, 1 Hall, 84, 121, 129; *Schnitzer v. Print Works*, 114 Mass. 123; *Railroad v. Smith*, 21 Wall. 255, 262. (3) The definition in question is to be proved like any other fact. The witnesses may testify as to their own experience or from information derived from others. That the witnesses

differed does not warrant a disregard of a finding that the usage existed. *Hill v. Morris*, 21 Mo. App. 256, 262; *Wear v. Sanger*, 91 Mo. 348, 356; *Sumner v. Tyson*, 20 N. H. 384, 387; *Scudder v. Bradbury*, 106 Mass. 422, 428, 429; *Bank v. Bank*, 19 Barb. 391, 401; Jones' Com. Cont., secs. 111, 114; Lawson on Usages, sec. 57. (4) The relevancy of the testimony as to usages upon the issue of the authority of Salmon & Co., to sell the apples in question by a description importing a warranty, is supported by a multitude of authorities. Mechem on Agency, sec. 947; *Helyear v. Hanks*, 5 Esp. N. P. 72; *Sandford v. Handy*, 23 Wend. 260, 266, 267; *Le Roy v. Beard*, 8 How. 441, 467; *Deming v. Chase*, 48 Vt. 382, 388, 389; *Talmage v. Bierhause*, 103 Ind. 270, 274, 275; *Ahern v. Goodspeed*, 72 N. Y. 114; *Schuchardt v. Allens*, 1 Wall. 359, 369; *Bayliffe v. Butterworth*, 1 Exch. 425, 428; *Bowring v. Shepherd*, L. R. 6 Q. B. 309, 321, 324, 327; *Stewart v. Canty*, 8 M. & W. 160; *Taylor v. Stray*, 2 C. B. (N. S.) 175, 191, 193; *Greaves v. Legg*, 11 Exch. 642, 645, 646; *Greaves v. Legg*, 2 Hurl. & Norm. 210, 213; *Cropper v. Cook*, L. R. 3 C. P. 194, 198; *Mollett v. Robinson*, L. R. 5 C. P. 646, 652, 653, 656; s..c., L. R. 7 C. P. 84, 103; *Pollock v. Stebles*, 10 Ad. & Ed. (N. S.) 765, 775; *Whitehouse v. Moore*, 13 Abb. Pr. 142, 145; *Goodenow v. Tyler*, 7 Mass. 36, 38, 46, 47; *Bailey v. Bensly*, 87 Ill. 556, 557; Mechem on Agency, sec. 947. (5) The rulings of the court below upon the question of warranty have the support of the great weight of authority and of the rulings of the appellate courts of this state. *Voss v. Maguire*, 18 Mo. App. 476, 481; *Murphy v. Gay*, 37 Mo. 535, 537; *Carter v. Black*, 46 Mo. 384; *Groff v. Foster*, 67 Mo. 512, 521; *Hawkins v. Pemberton*, 51 N. Y. 198; *White v. Miller*, 71 N. Y. 118, 129; *Mining Co. v. Jones*, 108 Pa. St. 55, 65; *Hastings v. Lovering*, 2 Pick. 214; *Bigge v. Parkinson*, 7 Hurl. & N. 955, 958, 959; *Hawkins v. Pemberton*, 51 N. Y. 198, 201,

Long Bros. v. The J. K. Armsby Co.

202 ; *Kerr v. Haymaker,* 20 Mo. App. 350, 352 ; *Hollman v. Koetter,* 20 Mo. App. 79 ; *Murphy v. Gay,* 37 Mo. 535, 537 ; Smith's Lead. Cas. [9 Am. Ed.] 327 ; *Randall v. Newson,* L. R. 2 Q. B. Div. 102, 106 ; *Mody v. Gregson,* L. R. 4 Ex. 49, 56 ; *Nichol v. Godts,* 10 Exch. 191 ; *White v. Miller,* 71 N. Y. 118, 131, 132 ; *Hawkins v. Pemberton,* 51 N. Y. 198, 202, 206, 207 ; 2 Benj. Sales, sec. 878 ; *Margetson v. Wright,* 8 Bing. 454 ; *Shewalter v. Ford,* 34 Miss. 417, 421 ; *Pritchard v. Fox,* 4 Jones' Law, 140, 142 ; *Parks v. O'Connor,* 70 Tex. 377, 390 ; 2 Suth. Dam., pp. 407, 417 ; *Martin v. Maxwell,* 18 Mo. App. 176, 180 ; *Ross v. Barker,* 30 Mo. 385 ; *Compton v. Parsons,* 76 Mo. 455, 457 ; 2 Benj. Sales, 695, note 2 ; secs. 1261, 1264, 1267, note ; *Voss v. Maguire,* 18 Mo. App. 476, 482 ; *Hallfield v. Black,* 20 Mo. App. 328, 331 ; *Fadley v. Smith,* 23 Mo. App. 87, 92 ; *Richardson v. Grandy,* 48 Vt. 22, 26 ; *Nauman v. Oberle,* 90 Mo. 666, 669 ; *Kent v. Friedman,* 101 N. Y. 616 ; *Downing v. Dearborn,* 77 Me. 457, 459 ; *Parks v. O'Connor,* 70 Tex. 387, 389, 390 ; *Love v. Miller,* 10 S. E. Rep. 685 ; *Bank v. Rathmann,* 43 N. W. Rep. 193.

SMITH, P. J.—The facts in this case about which there seems to be no dispute may be summarized as follows : *First.* The plaintiffs are wholesale merchants at Kansas City, who buy goods in large quantities for the purpose of selling them in smaller quantities as the demands of their customers may require ; *second,* the defendant is a merchant at Chicago, who deals principally in dried or evaporated fruit and canned goods, having immediate relations by contract with the manufacturers of these goods ; *third,* the defendant had been largely engaged in selling in the Kansas City market through J. C. Salmon & Co., their agents, for fifteen years past ; *fourth,* that Salmon & Co. had always exercised the authority of offering the defendant's goods, and that contracts of sale made by them on its behalf had uniformly been filled ; *fifth,* that many of these

dealings had been had with plaintiffs; *sixth*, that in January, 1888, Seavey, as a member of the firm of Salmon & Co., offered the plaintiff, John Long, a carload of five hundred boxes of "strictly choice evaporated apples," and that, after some negotiations as to the price, Long bought the apples upon a distinct and unequivocal statement that they would be "strictly choice;" *seventh*, that Seavey communicated the order to defendant who caused the manufacturer to ship a carload of apples direct to the plaintiffs; *eighth*, that in the market evaporated apples are graded as fair, fully fair, prime, strictly prime, choice and strictly choice, and that there is a difference in the price, varying from one-half a cent to two cents per pound; *ninth*, that the apples in question were received about January 26, 1888, and unloaded on the same or next day (not in March, as the appellant has it); *tenth*, that the apples were properly stored, and in April and May began to turn black and sour, and to ferment; *eleventh*, that the defendant and its agents were notified of the fact, and that the boxes remained unsold, but refused to make any allowance for them.

The following are additional facts which, it appears by the instructions, were found from the evidence by the jury: *First*. That the terms, "strictly choice," as applied to evaporated apples, had a defined and well-known meaning—namely, that the apples were of good color, cut in rings, had been properly evaporated, and would keep in good condition through the summer next ensuing; *second*, that the apples in question spoiled and became worthless either because they had not been sufficiently or properly evaporated in the first instance, or because they had subsequently been soaked by having water poured on them in order to make them weigh; *third*, that, although they were fair in appearance when they were delivered, their subsequent spoiled condition was attributable to their condition when delivered; *fourth*, that they were not in fact "strictly choice" in

quality when received by plaintiffs, but that this fact could not be ascertained by any inspection which was or could have been made by the purchaser at the time; *fifth*, that Salmon & Co. were the general selling agents of the defendant; *sixth*, that it was usual and customary in the Kansas City market to sell evaporated apples either according to grades or by sample, and that the defendant, or its agents, knew this fact; *seventh*, that plaintiffs did not buy these apples on inspection merely, or intending to waive any warranty in their favor; *eighth*, that both parties to the sale intended the words, "strictly choice," in the contract to mean that the apples would keep through the ensuing season.

The verdict and judgment were for the plaintiffs. The defendant has appealed.

I. The defendant makes the contention that the plaintiffs' petition pleads an express warranty, while the trial court instructed the jury upon the hypothesis that it pleaded an implied warranty. The rule of pleading, as we understand it to be, requires that matters should be pleaded according to their legal effect, and that a general allegation that the vendor warranted the goods sold to be of good quality is sufficient. It is wholly unnecessary in pleading, where a mere general warranty of the quality of the goods is relied on, to state whether the warranty is express or implied. *Hoe v. Sanborn*, 21 N. Y. 352; 1 Smith's Lead. Cases [9 Ed.] 329. And it would seem that, though the warranty is implied by law, yet, when the implication arises from a statement made, whether a description or a sample exhibited, it is an express warranty. The class of warranties implied by law, from things said or acts done by the vendor, are entitled to rank, so far as any question of pleading is concerned, as express warranties. *Henshaw v. Robins*, 9 Met. 83; *Hawkins v. Pemberton*, 51 N. Y. 198. The rule as to pleading is probably the same as that which would govern in an action to recover money loaned. On the allegation of a promise to pay, either an express

promise to that effect or one implied by law from the fact of the loan could be shown to sustain this allegation. It follows from these observations that the court did not err in instructing upon the idea of an implied warranty, though the petition alleged an express warranty.

II.   The vital and decisive question which we are required to decide is whether the trial court erred in permitting the plaintiffs to adduce evidence tending to show : *First*, that the plaintiffs and defendant entered into a contract for the sale and future delivery of evaporated apples in which the term "strictly choice" was used ; *second*, that this term had acquired by the usages of the Kansas City evaporated apple trade a well-known and defined meaning ; that it had become a trade term having a special signification well known in the city where the contract was made; and, *third*, to explain to the court the meaning of this technicality. No doubt these words have a meaning and bearing upon the true interpretation of the contract.   Unable from any natural and ordinary sense of the words to say exactly what their bearing is, we have to admit they are used by those engaged in the evaporated apple trade as a technical term—a term of usage so far as the continuous employment of technical words may be called a usage.   That has been deemed to be more properly a usage which has taken words which in common use singly or together have a meaning and intelligibility to all eyes and ears, and which has by putting them in a particular use, as in some trade or handicraft, attached to them a meaning and effect not consonant with their public or general meaning.   *Walls v. Bailey*, 49 N. Y. 464.   The phrase, "strictly choice," is in that category.   It is not used as simply the two words which make it up, but as a compound word and phrase, and as such it does not convey to the public or in general a definite sense, in any sense.   The simple phrase has

become one of the technicalities of a business not free from abstruseness, and which deals to much extent in technical phrases, the meaning of which, as used by experts in the business, needs explanation to the unaccustomed. The testimony of merchants and business men who had been for years engaged in the evaporated apple trade, in their quality as experts, was proper to explain the meaning of the technicality. Where else could the court, whose function was to interpret the contract, look for an explanation of the meaning of a term having a special significance with which it was presumably unacquainted. The meaning could be referred to the dictionary of no language. Without an understanding of the sense in which the term was used the interpretation of the contract was impossible. We are told that in the every-day practice of those engaged in this special trade this term is used, and that when so used it is understood to have a specific meaning, namely, that the apples were of good color, cut in rings, had been properly evaporated, and would keep in good condition the summer ensuing. To give effect to this contract it must be construed as if the meaning of the term, instead of the term itself, were embodied in its provisions. Judicial recognition of the meaning in which this term is used by the trade is essential in the interpretation of contracts in which it is a descriptive term. Indeed, the whole law merchant is little more than a judicial recognition of commercial rules and usages. Numberless terms are used in the various branches of commerce and trade, which have a distinct and well-defined and known meaning, but which to the uninitiated and general public are not more intelligible than if Sanscrit. This is not a case where the evidence was introduced for the purpose of establishing the existence of a custom, the effect of which would be to engraft or weld onto the contract a stipulation or provision not in the contemplation of the contracting

parties when the contract was made.   It is rather where evidence is introduced to prove the meaning of a technical term employed by them in the transaction of the sale and purchase.   To arrive at the meaning of the term the court is obliged to call in those skilled in its use to explain its special signification.   Those who are unskilled and strangers to the trade cannot give the desired information.   Those who are qualified by their special knowledge, acquired by practice and experience, can alone enlighten the court in respect to an abstruse technicality.   To exclude evidence explanatory of the meaning of the term is to reject a knowledge of the provisions of the contract which the court is called upon to construe.

It will perhaps be proper in this connection and before finally disposing of the question under consideration to make some reference to the authorities which have, in a measure, influenced our judgment.   In a case in some respects analogous to this ( *Nelson v. Ins. Co.*, 71 N. Y. 453 ) it was held that it was not technically one of usage, but that the evidence was offered to prove the meaning of a mercantile term so as to enable the court to ascertain the contract made.   The principle was held to be widely different from the one which obtained where an incident was undertaken to be annexed to a contract by usage.   It was also held to make a party liable under such a definition did not depend upon the general rules governing the effect of usages.   So it has been often held that the admissibility of evidence of this kind is necessary to enable the court to understand the contract made, and that the elements of a general and uniform usage need not be proved in such a case, and that the evidence is competent whether the definition be sanctioned by usage, local or general, limited or universal.   Jones on Com. Contr., secs. 61, 96, 104 ; 1 Greenl. Ev. ; *Carter v. Coal Co.*, 77 Pa. St. 290 ; *Susquehanna Fert. Co. v. White*, 66 Md. 444 ; *Whitmore v. Coats*, 14 Mo. 9 ; *Kimball v. Browner*, 47

Mo. 398. Evidence is admissible to show that the words used in the contract constitute a commercial term which had a clear and well-defined meaning.

The principle upon which the doctrine proceeds is that the parties must be taken to have contracted with reference to the custom or usage. There are two branches of the rule ; one relates to the language used, and evidence is admissible to explain its mercantile or trade meaning ; the other has reference to known usages which prevail as to the subject-matter of certain contracts to whose terms incidents may be thereby annexed, provided they are not repugnant to, or inconsistent with, them. Jones on Contr. of Com. & Trade Contr., secs. 61 ; 1 Greenl. Ev. [14 Ed.] sec. 292 ; *Field v. Lateau,* 6 Hurd. & Norm. 617 ; *Nelson v. Ins. Co., supra.* The rule is well established that if the contract itself, or the circumstances surrounding it, indicate that its words are used in some special sense, it will defeat the intention of the parties to construe them in their ordinary sense, and that which is a rule for obtaining the thought of the contract will be converted into a means of thwarting its provisions. The fact that the word or words used have a plain, unambiguous and apparent meaning is no reason for the rejection of proof that it is employed in the sense which it has acquired by usage. If it is shown that a special sense is attached by known usage of trade to words of a contract, it is presumed that the words bear their special meaning. Jones on Contr. of Com. & Trade Contr., sec. 62 ; *Kimball v. Brainer,* 47 Mo. 398 ; *Soutier v. Kellerman,* 18 Mo. 510 ; *Whitmore v. Coats,* 14 Mo. 10. In the last cited case the action was on a contract for the delivery of "prime barley." The court says : "There is nothing improper in referring to the usage of merchants as to the terms employed by them in this contract. The parties were merchants, commission merchants, employed for years, as it appears from the evidence, in buying and selling grain, barley among the other kinds. They

were presumed to know other kinds; they were presumed to know the meaning of the words, "prime barley," as well as to know the distinctions of that kind of grain used and employed in buying and dealing. To the same effect are the decisions in *Carter v. Coal Co.*, 77 Pa. St. 286; *Susquehanna Fert. Co. v. White*, 66 Md. 444; *Mixer v. Coburn*, 11 Met. 559; *Sumner v. Tyson*, 20 N. H. 384.

The meaning of terms at the place where the parties use them, or to which they look as the seat of the contract may also control their interpretation. It is proper, therefore, to receive evidence of the particular sense which any word of the contract has acquired by usage in any special locality. Jones Contr. Com. & Trade Contr., sec. 63; Wharton on Con., sec. 63. The reason for resorting to such testimony is that, in the hurry of trade and the multitude of contracts, brevity and condensation are absolutely essential. Words to the layman of meaningless or of limited force have, in the minds of those familiar with them, a comprehensive and intelligent definition. Accordingly, it has been settled that parties engaged in a particular trade, and who use a mercantile term having a fixed meaning in the trade, are conclusively bound to use it in that sense. They can no more be heard to say that they did not know the meaning or did not use it in that sense than a party in ordinary cases can escape a contract by saying that he did not understand the effect of the words used. Where two in a particular trade deal with each other in the language of their trade, they are presumed to speak the mercantile meaning of words of that trade. *Buckle v. Knoop*, L. R. 2 Exch. 125; *Hudson v. Ede*, L. R. 3 Q. B. 412; *Appleton v. Fisher*, 34 Md. 540; *Houghton v. Ins. Co.*, 131 Mass. 300; *Daniels v. Ins. Co.*, 12 Cush. 416; *Doane v. Durham*, 79 Ill. 131. And the decisions of the courts in the various jurisdictions seem to be quite uniform and to result in this, that when words have acquired an exact and technical meaning in any

trade or business, and are used in a contract relating to such trade or business, *prima facie*, they are to be construed in the meaning or sense which they have acquired in that business. *Houghton v. Ins. Co.*, 131 Mass. 300, and cases there cited. And so it has been held that a person who deals in a general market is bound to inquire into what its usages are; and those who deal with him have a right to hold him bound by them to the same extent as they would have been entitled to hold a person bound who belonged to the place. He is precluded from setting up, as against the persons he dealt with, his ignorance of that which he ought to have known. *Cothran v. Ellis*, 107 Ill. 413; *Talcott v. Smith*, 42 Mass. 542; *Whitmore v. Coats, supra; Walsh v. Homer*, 10 Mo. 6; *Wall v. Bailey*, 49 N. Y. 473; *Wallace v. Bradshaw*, 6 Dana, 382. And usage may be general, though confined to a particular city, town, village or district. *Gleason v. Walsh*, 43 Me. 397; *Van Ness v. Packard*, 2 Peters, 137. So, when a person employs a broker to do business for him at a particular place, he must be taken to have contracted according to the custom of that place. *Greaves v. Legg*, 12 Exch. 642; *Greaves v. Legg*, 2 Hurl. & Norm. 210; *Bailey v. Bensly*, 87 Ill. 556; *Lynn v. Culbertson*, 83 Ill. 33; Story on Agency, secs. 60, 96, 199; Mechem on Agency, sec. 947. And so, too, it has been conclusively settled that a non-resident merchant employing an agent embodies the local usage in the authority conferred by the employment. Wharton on Agency, sec. 134; *Sutton v. Talham*, 10 Ad. & Ed. 27; *Bayliffe v. Butterworth*, 1 Exch. 425; *Bailey v. Bensly*, 87 Ill. 556. And such usage is the same whether the sale is made by a broker for his principal or by the principal directly to the broker. *Appleman v. Fisher*, 34 Md. 540. An authority to an agent to sell goods includes the authority to use the usual means and modes of accomplishing the object proposed, such as a warranty of the quality and condition of the article sold. The power to sell includes the power to warrant them.

*Palmer v. Hatch*, 46 Mo. 585; Story on Agency, secs. 58, 59, 60, 77, 96, 97, 102, 106; 2 Benj. on Sales, sec. 825; Wharton on Agency, secs. 158, 716; Mechem on Agency, sec. 947. So, it is held that the principal is bound to know that his agent could not sell goods without describing them. *Sandford v. Handy*, 23 Wend. 260; *Deming v. Chase*, 48 Vt. 382; *White v. Miller*, 71 N. Y. 110.

The term in question may be proved like any other fact. The witnesses may testify as to their own experience and from information derived from others. *Hill v. Morris*, 21 Mo. App. 256, 262; *Wear v. Sanger*, 91 Mo. 348, 356; *Sumner v. Tyson*, 20 N. H. 384, 387; *Scudder v. Bradbury*, 106 Mass. 422, 428, 429; *Commercial Bank v. Bank*, 19 Barb. 391, 401; Jones Com. Con., secs. 111, 114; Lawson on Usages, sec. 57. Evidence, however, showing that by the local usage a term possesses a special commercial sense is inadmissible when both parties to the contract in which the term is employed are not of the same trade or kind of business. In such case there is no presumption that both parties contracted with reference to such local usage and made it a part of their agreement. There is a distinction, therefore, between a case of this sort and one where both of the contracting parties are engaged in the same kind of trade or business. The distinction is noted in many of the local usage cases. *Wall v. Bailey*, 4 Sickles, 464, cited by plaintiffs, is a type of that class. It results from what has been said that the circuit court did not err in admitting the evidence in question.

III. The plaintiffs' second instruction told the jury that if the evaporated apples were not present at the time of the sale, but were sold by the description of "strictly choice," then the law implied a warranty that the apples to be delivered would be equal to those described. It has been again and again determined in this state that a sale by description imparts a warranty that the property sold is of that description. *Voss v.*

*McGuire*, 18 Mo. App. 476; *Murphy v. Gay*, 37 Mo. 536; *Carter v. Black*, 46 Mo. 384; *Graff v. Foster*, 67 Mo. 512. There is some objection made that the plaintiffs reserved the right of inspection of the apples when they arrived, and thereby intended to rely on their own inspection instead of the warranty of the defendant. The defendant's third instruction, which told the jury that even if broker Seavey did, at the time of making the sale, state that the apples were to be strictly choice, still if plaintiffs did not see fit to rely thereon, and did not rely thereon, but expressly reserved the right of inspection of the apples on their arrival, intending thereby to rely, not on the statement of the broker, but alone upon their own inspection, then it was not a sale by warranty; and if in making the sale defendant was guilty of no fraud, and was not himself the manufacturer of the goods, then plaintiffs cannot recover in this action, fairly submitted that matter to the consideration of the jury; so there ought to be no complaint on that account. The defects in the apples were invisible and not discoverable at the time the plaintiffs had the right to inspect them. An inspection would have availed them nothing. The terms of the contract covered their invisible and inherent defects. In *Randall v. Newson*, 2 Q. B. Div. 109, it is said: "If the article or commodity offered or delivered does not in fact answer the description of it in the contract, it does not do it more or less because the defect in it is present or latent or discoverable." In a case where the contract stipulated for the delivery of "good merchantable cattle," the evidence disclosed that when the cattle were delivered they were infected by a disease not discoverable by inspection, and that by reason of the disease many of them died. The seller insisted that the rule *caveat emptor* applied. The purchaser claimed that the words, "good, merchantable cattle," implied a warranty, and that the seller should make good the loss. It was held that if the property was not such as was

described, and the defect was such as could not be discovered by the exercise of reasonable care, and the buyer did not discover it until he had made such disposition of the property that he could not return it to the seller, then he might recover his damages by reason of the seller's failure to comply with the terms of his contract. *Parks v. O'Connor*, 70 Tex. 377. In line with this case are 2 Benj. on Sales, sec. 878; *Margetson v. Wright*, 8 Bing. 454; *Shewalter v. Ford*, 34 Miss. 417; *Pritchard v. Fox*, 4 Jones' Com. Law, 140. *Jones v. Just*, L. R. 3 Q. B. 197, was a case where the plaintiffs, at Liverpool, entered into a contract with the defendant for the purchase of a quantity of manilla hemp, to arrive from Singapore by certain ships. The hemp was delivered and paid for; but on examination it was found that the bales had been wetted through and afterwards dried and repacked. The hemp was not damaged to such an extent as to make it lose its character of hemp; but it was not "merchantable." The defendant seller did not know the state in which the hemp had been shipped. The court held that there was an implied warranty to supply Manilla hemp of the particular quality of which the bales consisted in a merchantable condition. In general, on the sale of goods by a particular description, whether the vendee is able to inspect them or not, it is an implied term of the contract that they shall reasonably answer such description, and, if they do not, it is unnecessary to put any other question to the jury.

An eminent English judge has said, that "It is the duty of the court in administering the law to lay down rules calculated to prevent fraud; to protect persons who are necessarily ignorant of the qualities of the commodity they purchase, and to make it to the interest of manufacturers and those who sell to furnish the best article that can be supplied." *Jones v. Bright*, 5 Bing. 533. This admonition should be kept steadily in view in applying the rule of *caveat emptor*.

It is insisted that there was an acceptance of the apples, but as this is a suit on the warranty the acceptance becomes unimportant. The warranty survives the acceptance. Benj. on Sales, note 2, secs. 1261, 1264, 1267; *Voss v. McGuire*, 18 Mo. App. 476; *Hallfield v. Black*, 20 Mo. App. 328; *Fadley v. Smith*, 23 Mo. App. 87. The plaintiffs could retain the goods and rely on the warranty and recover the difference between the value of the goods contracted for and those delivered. *Brown v. Weldon*, 99 Mo. 564; *Keystone Imp. Co. v. Leonard*, 40 Mo. App. 477. The instructions given did, and those refused did not, present correct theories of the law as applicable to the case, and, therefore, no error is perceived in the action of the court in respect thereto.

IV. No error is perceived in the rulings of the court in excluding testimony offered by defendants in relation to the usage outside of Kansas City. In the light of the authorities which we have cited the usage prevailing elsewhere would be wholly immaterial to the issue, and, therefore, properly rejected. *Parkhurst v. Ins. Co.*, 100 Mass. 301; *Allen v. Lyle*, 35 Miss. 513; *Mason v. Franklin*, 12 Gill & J. 468; *Nichols v. De Wolf*, 1 R. I. 277; *Means v. Waples*, 3 Houst. 581; *Ober v. Carson*, 62 Mo. 209.

V. The objection that the verdict is a general one does not apply because while there were two counts in the petition there is only one cause of action stated. *Owens v. Railroad*, 58 Mo. 386; *Lancaster v. Ins. Co.*, 92 Mo. 460; *Campbell v. King*, 32 Mo. App. 38. Many other questions collateral to that which is conceded to be vital and decisive of the case have been discussed both in the argument of counsel here at the bar and in their briefs, which we have not deemed it necessary to notice, in view of the grounds upon which we have disposed of the case. The judgment will be affirmed. All concur.