[Civ. No. 20561.   Second Dist., Div. One.   May 31, 1955.]

JOE G. BRACKER et al., Respondents, v. AMERICAN NATIONAL FOOD, INC., Appellant.

Wadsworth & Fraser and Charles E. McClung for Appellant.

Eugene L. Wolver for Respondents.

WHITE, P. J.—Defendant, American National Foods, Inc., has appealed from a judgment awarding plaintiffs $5,327.95 damages for breach of warranty as to the quality of four carloads of tomatoes sold through a Kansas City broker while in transit from Tracy, California, to Kansas City, Missouri.

Appellant urges as its first ground for reversal that judgment should have been for appellant on the first affirmative defense alleged in the answer, to wit "that the complaint

does not state facts sufficient to constitute a cause of action."

As urged by appellant, said defense was not waived by its failure to demur. (*Wilson* v. *Sharp*, 42 Cal.2d 675 [268 P.2d 1062].) However, the only defect in the complaint specified by appellant, either at the trial or upon this appeal, is that paragraph X thereof is an incorrect and insufficient allegation of damage. Said paragraph X alleges "That in truth and in fact said cars were not all of the same quality nor did they grade said '85%', as aforesaid, and that by reason of the quality of such tomatoes in said cars, plaintiffs' loss consisting of the purchase price, freight and inspection, in excess of the sums received for such cars, amounts to $7,685.46, to plaintiffs' damage in such sum."

Said affirmative defense has the same force as a general demurrer to the complaint. As stated in *Beason* v. *Griff*, 127 Cal.App.2d 382, 387 [274 P.2d 47], "In ruling upon a general demurrer, effect must be given to every allegation in the complaint; and the demurrer must be overruled if the complaint states, or from its averments it can be reasonably inferred, that plaintiff has a cause of action against defendant on any theory. (Citations.) The averment of an improper or wrong measure of damages, or the demand or prayer for items of damage not warranted by the facts alleged is not a ground for general demurrer. (Citations.)" The court did not err in proceeding to trial on the complaint in the instant action.

Respondents, as joint adventurers, bought five cars of tomatoes from appellant, through Jack Good, the manager of appellant's agent, Graham Cooksie and Company. The deal was made on October 28, 1952, by telephone conversation between respondent Robinson and Jack Good. Both were in Kansas City. Jack Good "represented, stated and warranted that said five cars of tomatoes were then in transit and that each and all of said cars were packed under the label . . . 'Blue Goose', and that each and all of said cars were of the same quality and that each of said cars would grade '85%' of quality number One in accordance with the standard of the United States Department of Agriculture, applicable to tomatoes in interstate Commerce." Respondents relied upon said warranty and were thereby induced to purchase and pay for said tomatoes. Said warranty and the label "Blue Goose" were "descriptions of merchandise" in said cars.

Prior to the consummation of said sale, seller knew that respondents' "purpose in buying and acquiring said five

cars of tomatoes was for resale and that plaintiffs were relying upon said defendant's skill and judgment in the picking, packing and shipping of said five cars and that none of said cars nor the contents thereof had been viewed or examined or otherwise seen by or on behalf of the plaintiffs or either of them."

Four of said cars did not grade 85 per cent of quality number one in accordance with the standard of the United States Department of Agriculture, but each graded 80 per cent or less thereof.

By reason of said grade and by reason of the fact that a material part of the tomatoes therein were immature and would not thereafter ripen, "said cars and the tomatoes therein were unsalable and unmerchantable and had no market value or reasonable value whatsoever."

The said offer, representation, statement, warranty, acceptance and purchase were all made in Kansas City, Missouri. The tomatoes were picked, packed and shipped from the Tracy area in the State of California and the sale was made requiring plaintiffs to pay the freight.

The following is a correct tabulation of the purchase price, freight, total cost, recoupment and loss:

| Car # | Sales Price | Freight | Total Costs | Recoupment | Loss |
|---|---|---|---|---|---|
| PFE 98495 | 1773.25 | 470.66 | 2243.91 | 470.66 | 1773.25 |
| PFE 93829 | 1706.25 | 470.66 | 2176.91 | 1394.03 | 782.88 |
| PFE 90356 | 1473.10 | 470.66 | 1943.76 | 569.44 | 1374.32 |
| PFE 44465 | 1397.50 | 0 | 1397.50 | 0 | 1397.50 |

Plaintiffs have been damaged in the sum of $5,327.95.

Plaintiffs immediately after ascertaining the aforesaid facts and breaches of warranty notified the defendant thereof and "any failure on the part of plaintiffs as to the giving of any such notice or breach of warranty was waived" by the defendants' predecessor, American Fruit Growers, Inc.

After plaintiffs' acceptance of said offer defendant, through its said agent, prepared five "brokers standard memorandums of sale," one for each car then sold, and mailed one copy of each to the seller and one of each to respondent Robinson. Said brokers' forms "were made and delivered subsequent to the completion of said sales and did not contain the entire agreement between the parties, particularly as to the warranty of grade or quality hereinbefore set forth," and the term "Blue Goose" set forth therein indicates a quality of 85 per cent or more Number One tomatoes in accordance

with the standard of the United States Department of Agriture, and at all times mentioned in said complaint said term "Blue Goose" was a descriptive name well known in the tomato trade to indicate such grade and quality.

Any inspection had by the plaintiffs upon receipt or delivery of said cars was a partial inspection and was not complete or sufficient to preclude plaintiffs from asserting the aforesaid claims for breach of warranties or damages for the same.

Plaintiffs caused said five cars to be iced but such ice did not retard the ripening of said tomatoes in said cars or have any adverse effect upon the condition of said tomatoes.

Respondents' claim for damages in connection with Car No. PFE 61634 and the tomatoes therein has been settled; and respondents are not precluded by such settlement from recovering the damages sought and awarded in the instant action upon their claims respecting the tomatoes in the other four cars listed above.

Briefly, the foregoing epitomizes the findings and conclusions of the trial court.

Appellant urges that the findings are not supported by the evidence in only two particulars, to wit:

(1) There is no evidence supporting the amount of damages found to have been suffered by respondents; and

(2) There is no evidence that the tomatoes delivered "had no market value or reasonable value whatsoever." The first item will be discussed later in connection with the consideration of the measure of damages. There is testimony in the record, based upon inspection after arrival at Kansas City, to the effect that three of the cars when shipped contained 30 to 40 per cent immature green tomatoes, and the fourth car 60 per cent; and other testimony to the effect that about 50 per cent of the tomatoes in the four cars were immature green, or "picked too soon," and "would never ripen." True, the witnesses so testifying did not view the tomatoes when picked and packed, or immediately upon the arrival of the cars in Kansas City, but, as was done by the court below, this court takes judicial notice of the fact that fruit once mature does not later become immature. Without conflict the evidence is that tomatoes are generally picked green for shipment east; that generally they are ripening when they reach the eastern market; that although green when picked they must be mature or they will not ripen; and that tomatoes picked at the proper time are called "mature green."

There is also evidence that cars containing "30% or more of immature tomatoes" are "never salable" in the Kansas City area, and could not have been sold there at any price at the time of the arrival of the four cars involved in the instant action. Such testimony supports the finding of "no value."

Appellant's next specification of error is that their objections to the introduction of testimony concerning an express warranty of quality made by telephone prior to the preparation and mailing of the broker's standard memorandum of sale should not have been overruled. In this connection it is appellant's contention that the broker's form, prepared and signed by the broker only, is the entire written contract between seller and buyers, that it supersedes their previous telephone agreement, and that it cannot be varied by parol evidence. The first paragraph of said memorandum is as follows:

"When the terms of sale have been agreed upon the broker shall fill out this Standard Memorandum of Sale in triplicate, sending one copy to the seller, one to the buyer and retaining the third copy for his own file. Unless the seller or the buyer makes immediate objection upon receipt of his copy of this Standard Memorandum of Sale, showing that contract was made contrary to authority given the Broker, he shall be conclusively presumed to agree that the terms of sale as set forth herein are fully correctly stated."

One of these forms was used to show the sale of each rolling car, and the commodity sold was designated in each as "Blue Goose Westside Tomatoes." The evidence claimed by appellant to have been erroneously admitted consisted of testimony regarding telephone conversations in which said cars were represented and warranted to contain tomatoes which would grade "85% or more U. S. No. Ones." Assuming, but not deciding, that in accordance with said broker's memorandum, buyer "shall be conclusively presumed to agree that the terms of sale as set forth herein are fully correctly stated," such testimony could not have prejudiced the rights of appellant in the instant action. The court's finding that "Blue Goose" was appellant's own label and was known generally to the tomato trade as indicating tomatoes grading "85% or more of U. S. No. Ones" was fully supported by evidence properly received. (*Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609, 629 [152 P.2d 774] ; *Long Brothers* v. *J. K. Armsby Co.,* 43 Mo.App. 253, 266, 269.) Since the written memorandum specified "Blue Goose" tomatoes, appellant could not have

been prejudiced by the admission of testimony regarding such telephone warranties.

Appellant contends that "The judgment must be reversed because the court below applied an erroneous measure of damages and there is no evidence in the record upon which damages could be properly computed. Moreover, by applying an erroneous measure of damages, the court below failed to find on the material elements from which damage could be properly computed."

The measure of damages to be applied in the instant action is a part of the substantive rights of the contracting parties and is governed by the law of Missouri. (Civ. Code, § 1646; 15 C.J.S. 956; 11 Am.Jur. 425; Rest., Conflicts of Law, § 372 and 413.) The courts of California take judicial notice of the laws of Missouri. (Code Civ. Proc., § 1875; *In re McVickers*, 29 Cal.2d 264, 272 [176 P.2d 40].)

A buyer who retains the goods delivered to him may recover as general damages "the difference between the actual value of the article at the time of sale and what its value would have been had it been as warranted." (*Meyer Furnace & Supply Co.* v. *Greenwell*, (Mo.App.) 297 S.W. 197, 198; 46 Am.Jur. 864.) It is undisputed that said four cars of tomatoes cost respondents the sum of $6,350.10 paid to appellants and $1,411.98 freight, a total of $7,762.08. In the absence of other evidence of the actual value of "Blue Goose" tomatoes at the time of arrival in Kansas City, it may reasonably be inferred that such tomatoes would have been worth the price so paid, $7,762.08. If, as assumed by appellant in its argument, the "bottom had dropped out of the market" while said tomatoes were in transit, then appellant could have produced evidence to that effect. There is none in the record.

Appellant assigns as prejudicial error the introduction over its objection of evidence of the sale of said tomatoes at various times and places other than Kansas City. As found by the court, such sales were in mitigation of respondents' loss. If the record contained no such evidence, respondents' judgment should have been for the whole amount paid by them, $7,762.08, the only value shown for the goods sold as of the time and place of sale, since the goods actually delivered as of said time and place of delivery were found to be of no value. Consequently, the errors in connection with the admission of such evidence, if any, were not prejudicial.

Appellant complains that the restriction of their cross-examination to the five cars actually involved in the action

was prejudicial error, particularly regarding car No. 41704. The question appearing in the record is: "Will you state when car 41704 arrived in Kansas City?" The objection that it was "incompetent, irrelevant and immaterial" was sustained. We have searched the transcript and do not find therein any offer of proof of any facts regarding said car No. 41704.

We will not here detail appellant's other specifications of error in the admission and rejection of evidence, since careful consideration thereof discloses that appellants were not prejudiced.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied June 20, 1955, and appellant's petition for a hearing by the Supreme Court was denied July 27, 1955.