WILLIAM Y. C. CAMPBELL, Respondent, v. ALFRED KING, Appellant.

### Kansas City Court of Appeals, July 2, 1888.

1. **Trespass**: SPOLIATION: BURDEN DEVOLVING UPON TRESPASSER. A person admitting an act of spoliation, it devolves on him to show that it was not committed against the party complaining, and failing to do so, a verdict may properly be directed for the plaintiff.

2. ————: PRACTICE : SEVERAL TRESPASSES AND SEPARATE VERDICTS. The rule that where there are several counts in the petition, and several trespasses, there should be separate verdicts, applies only where several distinct causes of action exist and are stated in separate counts. If there is but one cause of action, although set out in several counts to meet any possible state of facts developed in the evidence, if there is one good count in the petition a general verdict will be upheld.

*Appeal from Lafayette Circuit Court.*—HON. JOHN P. STROTHER, Judge.

AFFIRMED.

Statement of case by the court.

This is an action in trespass, instituted before a justice of the peace.

The statement contained several counts. The *gravamen* of the complaint is, that defendant cut down and destroyed a wire fence, the property of plaintiff in his premises. Some of the counts were, under the statute, for double damages, etc., and some were for a common-law trespass. The evidence developed about the following state of facts : The land on which the fence stood belonged to one Henry Campbell, Sr., who died intestate, leaving the plaintiff, with many other children and grandchildren as his heirs at law. The defendant married a daughter of the intestate. At the time of his death there was a small graveyard on the forty-acre

tract in question, which was used as a family burying-ground; and some neighbors were permitted to bury members of their families therein.

In 1878, the heirs built around these graves a plank fence, embracing about one-half acre of land. The plaintiff seems to have held the key to the gate which locked in this lot; though it was accessible to all the heirs when they wished to go into the grounds. The graves were in the northeast corner of this lot.

On the south side of this lot ran a county public road. The road inclined in its direction from the north-west to the southeast. Its relation to the graveyard lot is shown by the following rough diagram:

From which it will be seen that the southwest corner of the fence inclosing the graveyard touched at this road; and from that point the road bore to the south-east, so as to leave a space between the fence, to the south, and the road of about one-seventh of an acre. The gate entrance to the graveyard was on the south side and near the middle of the south string of fence.

After this the heirs brought a partition suit for the division of the lands of the estate, embracing a large amount of land, including the forty acres on which the graveyard was located. By oral agreement between the

heirs it was concluded to leave one acre instead of the one-half acre for a graveyard.

The forty acres aforesaid in the decree of partition was allotted to plaintiff; and in the decree was the following reservation: "Except the graveyard, consisting of one acre of land situated on" said forty acres.

Afterwards the plaintiff built a fence on the south part of this forty-acre tract, composed of posts and wire. He connected the fence with the graveyard at the southwest corner, and at the southeast corner, leaving the space of one-seventh of an acre on the south side open to the road. The defendant did not consent to this action of plaintiff; and cut down the fence at the southwest corner for about twenty-one feet, and at the southeast corner for about seventeen feet.

It should be further stated that about the time plaintiff was preparing to so build his fence, by delivering on the ground the posts and wire therefor, the defendant, with the consent of some of the heirs, had the county surveyor lay off one acre including the graveyard. He was directed to lay it off in a square. The surveyor testified that he could not locate the one acre from anything contained in the language of the reservation in the judgment of partition. He run the one acre so as to include the half-acre fenced in, making it the center, as nearly as possible, of the acre. But in order to do this he had to put the southwest corner of the acre about the middle of the public road, so as to include the one-seventh of an acre lying south of the graveyard fence. He had no authority for this survey, other than the request of defendant, and the concurrence of some of the heirs.

The instructions given and refused are numerous; but in view of the opinion of the court it is not necessary to set them out. The jury returned a verdict for the plaintiff, assessing his damages at $1.54. Defendant prosecutes this appeal.

*Wallace & Chiles*, for the appellant.

(1) Defendant was entitled to and held the possession of his wife's interest in the land in controversy. *Bledsoe v. Simms*, 53 Mo. 305. And, as such, was tenant in common with the other heirs. This being so, this action in trespass does not lie. 41 Kent's Com. (6 Ed.) 369; *Gibson v. Vaughn*, 2 Bailey (S. C.) 389; *Warfield v. Lindell*, 38 Mo. 561; *Dubois v. Campan*, 28 Mich. 316. The exceptions to this rule are, where the alleged trespasser ousts his co-tenants, and assumes exclusive possession of the common property; and when he destroys the common property. This case is not within the exceptions. (2) The court erred in refusing defendant's instructions. Appellant's second instruction, that the acre should, as a matter of law, be laid off in a square, was correct, and should have been given. Under our system of surveying in Missouri, as adopted by the United States government, and by which our lands were obtained and are still sold in the absence of other more specific boundaries, everything goes by square measurement. Our townships, sections, quarter-sections and sixteenth-sections are all squares. So "an acre" is a quantity of square measurement, and without further direction should be so laid off, and such description would not of itself be void. The graveyard itself fixes the location, and the words "one acre" the boundaries and measurements. Similar conclusions have been reached by the courts concerning even larger bodies of land. *Evans v. Green*, 21 Mo. 170; *Walsh's Lessee v. Ringar*, 2 Ohio, 327; *Cunningham's Lessee v. Harper*, Wright (Ohio), 366; *Hays' Lessee v. Storss*, Wright (Ohio), 711. (3) It was assumed that the reservation of the graveyard was void for uncertainty. While this, at the most, might have been the case, had there been no graveyard actually occupied as such, it was not so in this instance, when the graveyard had an actual existence and could be found without

reference to boundaries. The ambiguity that makes a deed void is a patent one ; the ambiguity in this case, if any, is latent. *Hardy v. Mathews*, 38 Mo. 121 ; *Shewalter v. Pirner*, 55 Mo. 218, and cases cited ; *Dow v. Jewell*, 18 N. H. 340. ( 4 ) To say the least, the action of appellant with one of the principal heirs, with the sanction and approval of most of the others ( those not acting being mainly non-resident ), amounts to an election, which they were entitled to make, and the rights of respondent being subordinate to the rights of the heirs in the graveyard—the deed to him excepting the graveyard—and respondent standing in the place of Henry Campbell, Sr., and, therefore, not entitled to a voice in this election, the grant and election under it of the graveyard will be construed most strongly against Henry Campbell, Sr., and the respondent, as his grantee, of the remaining land and in favor of his heirs. And if there is any uncertainty in the description, then the heirs have the right by election to make it certain. *Armstrong v. Mudd*, 10 B. Mon. 144 ; *Jackson v. Hudson*, 3 Johns. 375 ; *Jackson v. Blodgett*, 16 Johns. 172 ; *Rung v. Stoneberger*, 2 Watts ( Penn.) 23 ; *Pollard v. Maddox*, 28 Ala. 321. ( 5 ) The complaint contains three distinct counts, and there were two distinct trespasses proven, and yet the verdict of the jury was a general one. This was error, and was saved specifically in the motion in arrest of judgment. *Bricker v. Railroad*, 83 Mo. 391. ( 6 ) The instructions given for plaintiff, being directly in contravention of those asked by defendant, and to the principles herein contended for, are wrong, and should have been refused.

*John E. Burden*, for the respondent.

( 1 ) The action of trespass will lie between tenants in common when there is exclusion from the enjoyment of the common property, or where there is a destruction in part or in whole of the subject-matter of the tenancy ; but the testimony in this case does not show that the trespass was committed on the graveyard acre, or

on any tenancy in common, and the doctrine respecting trespass between tenants in common, as laid down in the cases cited under this point by appellant, has no application here. ( 2 ) The reservation of the one acre for a graveyard in the deed and decree in evidence was void for uncertainty, but even if this were not so there is no evidence in the case showing the trespass to have been committed on the one acre reserved as a graveyard, and no evidence offered by appellant to explain any latent ambiguity in the deed, or to show where the parties intended to locate the acre. If the location and boundaries of the one-acre graveyard were .never fixed and determined by Henry Campbell, deceased, in his lifetime, by his deed or will, or by his heirs after his death, then such location cannot be had and made in this collateral proceeding, to which all the heirs of said decedent are not parties. Appellant's instructions were properly refused. *Campbell v. Johnson*, 44 Mo. 247 ;. *Bell v. Dawson*, 32 Mo. 79 ; *Holme v. Strautman*, 35 Mo. 293 ; *Alexander v. Hicox*, 34 Mo. 496 ; *Nelson v. Brodhack*, 44 Mo. 603 ; *Shultz v. Lindell*, 30 Mo. 310, 312, 321. Opinion of surveyor is inadmissible. *Blumenthal v. Roll*, 24 Mo. 113 ; *Clemens v. Rannells*, 34 Mo. 579. ( 3 ) An acre may be a quantity of square measurement, and should be so laid off where practicable, but it is not practicable to lay out a graveyard in the public highway, nor is it practicable or legal, under the facts in this case, to lay off this acre except to begin at the southwest corner of the present inclosure around the graveyard, fixed there in 1878, and lay the acre off north of the county road, whether the acre is to be square or otherwise, and Mr. Satterfield's decrees, sitting as a high court of chancery on the aforesaid graveyard, are *coram non judice. Blumenthal v. Roll*, 24 Mo. 113. ( 4 ) Where there has been one " election " and one location as to boundary, by the consent and approval of all the heirs, including the defendant, and such location ratified by five years' user there cannot be a second election by two out of the thirty heirs named

in the decree of partition.    This case originated before
a justice of the peace, where the rule that the jury
must make a finding on all the issues does not apply,
and the practice act does not apply to the trial
of a cause appealed from a justice's court. *Loomis
v. Railroad*, 17 Mo. 341 ; *Sontier v. Kellerman*, 18
Mo. 509 ; R. S., secs. 2850, 3052.    Besides, there is
only one cause of action and one trespass here.    Cases
*supra; Allen v. Railroad*, 84 Mo. 653 ; *Dermody v.
Steamboat*, 28 Mo. 284.    ( 5 ) There was no title to real
estate put in issue in this case.    ( 1 ) The appellant's
answer admits title in the respondent to more land than
he claimed, but the dispute is as to where the trespass
was committed ; and ( 2 ) the appellant waived his right
to have the case certified to the circuit court by subse-
quently appearing in another justice's court and trying
the case on its merits, and then appealing therefrom.
2 Waterman on Trespass, secs. 945, 946, 947, 1040 ;
*Dubois v. Beaver*, 25 N. Y. 123, 128 ; *Ervin v. Olm-
stead*, 7 Cowen, 229 ; *McCormick v. Monroe*, 1 Jones L.
[ N. C.] 13 ; *Marsh v. Berry*, 7 Cowen, 344 ; *Dermody
v. Steamboat*, 28 Mo. 284.    ( 6 ) The judgment below
ought to be affirmed on account of the trifling amount
of the judgment appealed from.

PER CURIAM.—The chief obstacle to defendant's con-
tention is, the uncertainty as to the location of the one
acre of land reserved in the judgment in partition.
Unless the surveyor could go upon the land with the
description furnished by the decree, and from *data*
therein, with the aid of extrinsic evidence, find and
locate the acre, the description must fail for uncertainty.
It may be conceded to defendant that the fact that
there was but one graveyard on the land would enable
a surveyor to locate the spot around which the one-acre
tract should be drawn.    It may be further conceded,
that in the absence of any legal or natural obstacle, the
one acre should be laid off in a square including the
existing graveyard.    But when the surveyor went on to

the ground he found that, in order to accomplish such result, he had to fix the southwest corner of the acre in the center of the public highway. And, therefore, under this plan, in order to secure to the heirs in common the full benefit of the reservation, it would be necessary to appropriate to private use a part of the public highway, without having the public consent. This, of course, he could not do. While the heirs might by agreement, properly authenticated, establish any boundaries they saw fit, outside of the public highway, for the one acre, neither the surveyor, nor a part of the heirs, without plaintiff's coöperation, could do so.

Then we are confronted with this state of facts, if we are to recognize as the graveyard the one-half acre inclosed with fence at the time of the partition suit, it is not practicable to lay off the one acre in a square with the half-acre as the center. How then is the one acre to be located? In what shape is it to be surveyed? Where is to be the initial point of the survey? These are questions the surveyor had no right to answer. They are doubts and uncertainties he could not solve. It seems to us that in this state of the case nothing short of a *consensus* among the heirs could give validity to the act of the surveyor. It is not apparent to us how a court could adjust this controversy.

I. At all events, we are not called upon in this action to do so. In the situation of the property at the time of the alleged trespass it cannot be maintained that the fence destroyed was on land owned in common by the plaintiff and defendant. It devolved on the defendant to show that the act of spoliation was committed on the reservation. Every part of the forty-acre tract belonged to the plaintiff, except such as was in fact and law reserved by the decree. The fence at the time of its destruction was in plaintiff's possession.

If defendant could cut down the fence within twenty and seventeen feet of the southwest and southeast corners of the graveyard fence; at what point of distance therefrom might plaintiff erect a fence on his

forty acres where it would be safe from the axe of the defendant? No one can say what direction the one-acre measurement shall take from the center of the present graveyard fence, after it is demonstrated that, taking the fence around the half-acre as the center, a square cannot be run so as to inclose one acre without appropriating a part of the public highway.

It is wholly unreasonable, as it would be violent, to suppose it was within the contemplation of the parties to the partition suit that the southwest corner of the one acre should be located in the public road. In view of the fact that the graves were in the northeast corner of the one-half-acre inclosure, it would be much more reasonable to hold that the southwest corner of the half-acre fence was a proper point from which to run the lines of the one acre in a square, running north and east from said corner. This would place plaintiff's fence, cut by defendant, on his forty acres outside of the reservation.

In any view we can take of this case the action of defendant cannot be justified. Having admitted his act of spoliation, it devolved on him to show that it was committed on the reservation; and having failed to do so, the court would have been justified in directing a verdict for the plaintiff.

II. It is urged by defendant, as a ground of reversal, that there are several counts in the petition, and several trespasses, on which there should have been separate verdicts, whereas the jury returned a general verdict. We held in *Loomis v. Railroad*, 17 Mo. App. 341, that where the action arose in a justice's court a general verdict is good. When that opinion was written, the case of *Bricker v. Railroad*, 83 Mo. 391, was not reported, and it had escaped the attention of the writer of the opinion, who was a member of the supreme court commission at the time Commissioner MARTIN wrote the opinion in *Bricker v. Railroad*. This, perhaps, was attributable to the fact that the question was only briefly discussed in the Bricker case.

But it is not necessary in this case that we should choose between the two opinions, on this rule of practice. The rule invoked by appellant applies only where several distinct causes of action exist and are stated in separate counts. If there is but one cause of action, although set out in several counts to meet any possible state of facts developed in the evidence, if there is one good count in the petition, a general verdict will be upheld. *Brownell v. Railroad*, 47 Mo. 239; *Owens v. Railroad*, 58 Mo. 394.

There was in this case but one cause of action shown by the evidence. While the plaintiff testified that his fence was twice cut, the only proof of such act having been committed by defendant applied to one and the same occasion. The amount of the verdict shows that the jury found but one act and one trespass; and that they found their verdict on the common-law count.

The damages sustained and assessed are little more than nominal. The court, on the maxim, *de minimis non curat lex*, will not remand the case, under such circumstances, on the bare possibility that a technical error may have been committed.

Judgment affirmed.