BANK OF LADDONIA, Defendant in Error, v. BRIGHT-COY COMMISSION CO., Plaintiff in Error.

St. Louis Court of Appeals, June 8, 1909.

1. PRACTICE: General Verdict: Several Courts. Where a petition was in three counts, two of which stated causes of action arising from separate and distinct alleged contracts, so that proof of one would not support a verdict upon the other, a general verdict which did not disclose which agreement the jury found had been made was improper.

2. BILLS AND NOTES: Acceptance: Conflict of Laws. Where the drawee of a bill of exchange, payable in Illinois, made a verbal agreement in Missouri, before a bill was drawn, to ac-

cept and pay the bill, the law of Illinois being the law of the place of performance, governs, and in the absence of proof as what the law of Illinois was, the common law rule would prevail.

3. ———: ———: **Verbal Acceptance: Common Law.** At common law a breach of a verbal agreement to accept a bill of exchange, to be thereafter drawn, gives sufficient ground for an action against the promisor by the payee.

4. **PRACTICE: Contracts: Contract for Benefit of Third Party.** Where a contract is entered into by two parties, for the benefit of a third party, such third party can maintain an action on the contract even though he is not named in it, if his interest in it is not merely that of indemnity.

5. ———: ———: ———. Where property is placed in the hands of a person who agrees to deliver it, or the proceeds of a sale thereof, to a third person, the latter can maintain an action for such proceeds against the person in whose hands the property was placed.

6. **CUSTOM: Commission Merchants: Contracts.** The fact that a commission merchant had habitually remitted to a certain bank the proceeds of the sales of the property of one of his customers did not bind him to remit the proceeds of any particular sale to such bank.

Writ of Error to the St. Louis City Circuit Court.— *Hon. W. M. Kinsey,* Judge.

REVERSED AND REMANDED.

*R. M. Nichols* for plaintiff in error.

The promise of the defendant was to accept a draft drawn for the Bailey cattle. The testimony shows that the defendant refused to accept the draft drawn for the Bailey cattle. The evidence conclusively shows an oral agreement to accept Hobson's draft drawn for the purchase of the cattle. Plaintiff cannot recover upon this oral promise. R. S. 1899, sec. 143; see Sess. Acts 1905, sec. 132, p. 258; Nichols v. Commercial Bank, 55 Mo. App. 81; Dickson v. March, 57 Mo. App. 566; Haeberle v. O'Day, 61 Mo. App. 390; Flato v. Mulhall, 72 Mo. 524. The uncontradicted testimony shows that the de-

fendant agreed to accept, or pay, which is the same thing, drafts drawn by Hobson for cattle purchased. There was no testimony that he agreed that "in consideration of said bank furnishing money to said Hobson with which to purchase cattle, and other live stock, to be consigned to defendant company for sale on commission, that said defendant would remit and pay to the plaintiff bank the proceeds of the sale of stock thus bought and shipped by said Hobson." There was total failure of proof of the contract described in this instruction. Beck v. Ferrara, 19 Mo. 30; Waldheir v. Railway, 71 Mo. 514.

*E. C. Kennen, P. H. Cullen* and *Jos. S. McIntyre* for respondent.

A third party may maintain an action on a promise to another in many cases as where one delivered money or personal property to another on the promise of the latter to deliver it over to the third party who has a beneficial interest therein, or to convert it into money and pay him the proceeds. Lawrence v. Fox, 20 N. Y. 268; Meyer v. Lowell, 44 Mo. 329; Rogers v. Goswell, 58 Mo. 589; Lime & Cement Co. v. Wind, 86 Mo. App. 163; Rothwell v. Skinker, 84 Mo. App. 169; Crone v. Stinde, 156 Mo. 262; Beatty Mfg. Co. v. Gerardi, 166 Mo. 142; Jefferson v. Asch, 53 Minn. 446, 25 L. R. A. 257 and note; Twedale v. Twedale, 61 L. R. A. 909. The contract made by Bright for the commission company with McCune for the bank was not a promise to pay draft of Hobson or the debt of another, but a promise to pay its debt in a particular way, that is the proceeds of stock shipped by Hobson to them for which the bank had advanced money to pay in the first instance, was to be returned through the bank of Laddonia. Winn v. Hiller, 43 Mo. App. 139; Frissell v. Williams, 87 Mo. App. 518; Beeler v. Finnel, 85 Mo. App. 438; Bradshaw v. Cochran, 91 Mo. App. 294. By virtue of section 447 of our statute one who makes and breaks an oral promise to

pay a draft even is liable for damages to one who negotiated the draft relying on the promise and section 30 of the new negotiable instrument law (see 463, Mo. Statutes) defines "negotiation" in such way that it can be clearly held the bank in the case "negotiated" the draft mentioned in evidence. R. S. 1899, sec. 447; Negotiable Instrument Law, sec. 30; Mo. Ann. Statutes, sec. 463 (30); Flata v. Mulhall, 72 Mo. 526. As to the right to recover on account of money had and received and when a judgment for money had and received may be entered, see the following cases: Clark v. Bank, 57 Mo. App. 285; York v. Farmers Bank, 105 Mo. App. 127; Richardson v. Drug Co., 92 Mo. App. 515; Harrison v. Lakenan, 189 Mo. 598; Banking Co. v. Donovan Com. Co., 195 Mo. 288.

STATEMENT.—Action for $1875.37, as money had and received by defendant but belonging to plaintiff. The facts out of which the controversy arose may be summarized from the evidence for plaintiff as follows: Prior to September, 1905, the firm of Cunningham & Hobson had been engaged in buying cattle in Audrain county and shipping them to defendant under an arrangement to which said firm, plaintiff and defendant were parties. Plaintiff is a banking corporation whose place of business is in said county and the Bright-Coy Commission Company handles stock on commission and otherwise at the National Stock Yards in Illinois, across the Mississippi river from St. Louis. The arrangement was like this: Cunningham & Hobson would buy cattle from farmers and pay for them with checks drawn on plaintiff bank in favor of the sellers. To get funds into the bank to meet these checks, Cunningham & Hobson would draw drafts at the same time in favor of the bank on the Bright-Coy Commission Company, defendant, to which they shipped and consigned the cattle. Plaintiff would put the amount drawn against each shipment to Cunningham & Hobson's credit on its books, thereby

139 App—8

giving the firm an account wherewith to meet the checks drawn in favor of the men from whom the cattle were bought, would transmit the drafts to plaintiff's correspondent in St. Louis, which would present them to the drawee, the Bright-Coy Commission Company, and the latter would pay them with the money obtained by selling the cattle against which they had been drawn. Either that plan was followed, or occasionally Cunningham & Hobson would draw no draft on defendant, but nevertheless plaintiff bank would give said firm credit on the books of enough money to discharge checks drawn to pay for a carload of cattle, and when the cattle had been shipped to defendant and sold by it, defendant would remit the proceeds, less a commission, to plaintiff. Both methods were authorized by the tripartite agreement. In September, 1905, Hobson wished to do business on his own account, and defendant wished to do business with him just as it had with the firm of Cunningham & Hobson. Testimony for plaintiff goes to prove Hobson, plaintiff, and M. A. Bright, representing defendant, agreed Hobson should go ahead with the business, the bank should furnish money for the purchase of cattle, and defendant reimburse the bank, either by honoring drafts the bank might draw on defendant against shipments of cattle or by remitting the proceeds of the sales of shipments to the bank when no drafts were drawn. In May or June, 1906, Hobson purchased thirty-two head of cattle from a man named Bailey for $2200 or more, and plaintiff furnished the money to pay for them pursuant to the aforesaid agreement. In this deal, as in most instances, Hobson drew a draft dated June 9, 1906, on defendant in favor of plaintiff's cashier; whereupon plaintiff gave him credit for said sum on its books and honored the check issued by him to pay for the cattle. Instead of Hobson's draft being honored on presentation as had been agreed and was customary, defendant refused payment and it was protested. Later, on June 12, 1906, defendant transmitted to plain-

tiff, on account of the sale of the Bailey cattle which had been shipped to defendant, a balance of $374.63 directing plaintiff to place it to the credit of John Hobson. The shipment of cattle was sold by defendant for about $2200, of which sum defendant applied $1700 or $1800 in discharge of an account Hobson owed it for feed and other things, remitting the balance to the bank. The present action was instituted to recover the sum retained by defendant on the ground that in equity and good conscience, and pursuant to the business arrangement among the parties, the bank was entitled to it. After defendant had refused to pay the draft plaintiff's cashier went to the National Stock Yards to see about the matter; whereupon Bright admitted the arrangement he had made with plaintiff's cashier, was for the bank to furnish Hobson money to buy cattle on defendant's promise to reimburse the bank out of the proceeds of the shipments, but said defendant had applied the proceeds of the Bailey cattle in discharge of what Hobson owed it—that said transaction was a cold business proposition between plaintiff and defendant and had nothing to do with the arrangement made between plaintiff's cashier and Bright. We have stated the case according to the testimony for plaintiff. For defendant it was equally strong in its tendency to prove no such arrangement as plaintiff insists on had been made; that defendant never promised, either to honor drafts drawn by Hobson in favor of plaintiff or remit to plaintiff the proceeds of sales of stock shipped to it by Hobson; that the business was according to the ordinary course of such dealings and amounted to this: Hobson would ship the cattle to defendant, defendant would sell them and remit the net proceeds to the bank to be put to Hobson's credit, not pursuant to any agreement with plaintiff to do that, but simply because Hobson directed his money to be sent to the bank. Hobson himself gave testimony in support of defendant's theory of the transaction, as did other witnesses, and the sum of the mat-

ter is there was a square conflict in the evidence on the main issue of fact. The first count of the petition alleges defendant received on June 12, 1906, $2250 which belonged to plaintiff, and it then and thereby became defendant's duty to pay the whole of said amount to plaintiff, but defendant only paid plaintiff $374.63 and retained $1875.37 for which plaintiff prayed judgment. The second count averred defendant and John Hobson entered into an agreement prior to June 10, 1906, by which Hobson was to purchase cattle and other live stock, and ship them to defendant to sell; that defendant agreed with Hobson if he would do this, defendant would pay the purchase price of the stock to plaintiff; that long prior to said date and pursuant to said agreement, Hobson had been buying cattle and shipping them to defendant, and the latter had paid for them by remitting the purchase price to plaintiff; that plaintiff was aware of said agreement and its terms, and that defendant was solvent and Hobson was not; that relying on said agreement plaintiff paid for all live stock bought by Hobson by honoring his checks, and thereupon would notify defendant of the amount of the purchase price and defendant would remit the amount immediately; that in accordance with said agreement, Hobson, on June 9th, bought cattle to be shipped to defendant as usual, drew his check on plaintiff for $2250, which plaintiff paid, being the purchase price of said cattle, and then Hobson directed defendant to pay plaintiff the full purchase price, as it was defendant's duty under said agreement between defendant and Hobson, to do. The count then alleges defendant sold said shipment of cattle and refused to pay plaintiff said sum of $2250 and only paid it $374.63; that plaintiff had demanded the price of said cattle and prayed judgment for $1875.37. The third count of the petition says plaintiff paid one Bailey at the special instance and request of John Hobson, as the price of some cattle, the sum of $2250 on June 9, 1906, and it was then and there agreed

between Hobson and plaintiff the said cattle were to be shipped to defendant, and the latter was to sell them and at once remit the proceeds to plaintiff; that it was agreed between Hobson and plaintiff that when said cattle were delivered to defendant "they were to be paid for, cash on delivery, and payment made to said bank;" that defendant had full knowledge of said agreement when it received the cattle, the latter being received by defendant on the express condition the purchase price should be paid to plaintiff; that defendant sold the cattle but refused to pay the whole purchase price to plaintiff, and though they sold for $2250, only paid plaintiff $374.-63, which was contrary to the agreement. Judgment was prayed for $1875.37.

The court submitted the case to the jury on the following instructions:

"1.  The court instructs the jury that if you believe and find from the evidence in this case that on or about the month of September, 1905, the John Hobson mentioned in the evidence was about to engage on his own account in the purchase and shipment of cattle and other live stock from the vicinity of Laddonia, Missouri, to the markets of St. Louis and East St. Louis, and if you further believe and find from all the facts and circumstances shown by the evidence in this case that the defendant, Bright-Coy Commission Company, through its president, Mr. Bright, about that time entered into an agreement or understanding with the plaintiff bank or with Hobson, whereby, in consideration of said bank furnishing money to said Hobson with which to purchase cattle and other live stock to be consigned to the defendant company for sale on commission, the said defendant would remit and pay to the said plaintiff bank the proceeds of sale of stock thus bought and shipped by said Hobson; and if you further believe and find from the evidence that on or about the 9th day of June, 1906, plaintiff bank, relying upon said understanding and agreement, cashed a check for $2,250 drawn by said

Hobson upon it in payment for 32 head of cattle, bought and about to be shipped by said Hobson to the defendant and that defendant received and sold the same on the market at East St. Louis, and thereafter failed and refused to remit or pay to the plaintiff the proceeds of said cattle except the sum of $374.63, then your verdict will be for the plaintiff.

"2. The court instructs the jury that if you believe and find from the evidence in this case that no agreement or understanding had been entered into between the defendant and the plaintiff or between the defendant and said Hobson whereby, prior to the 10th day of June, 1906, in consideration that plaintiff would advance money to said Hobson with which to buy and ship stock to the defendant to be sold on commission, the defendant would remit to the plaintiff the proceeds of all stock thus bought and shipped by Hobson to it, then your verdict must be for the defendant.

"3. If you find for the plaintiff under the foregoing instructions, you will assess its damages in a sum equal to the net proceeds of the cattle in question, less the sum of $374.63, sent by defendant to plaintiff."

The following instructions requested by defendant were refused:

"1. The court instructs the jury that under all the testimony in this case they must find a verdict for the defendant.

"2. The court instructs the jury that if they believe from the evidence that defendant did not agree with the plaintiff to pay for cattle purchased by John Hobson, then they must find a verdict for defendant.

"3. The court instructs the jury that if they believe from the evidence that the only contract or agreement between the Bright-Coy Commission Co. and the plaintiff Bank of Laddonia was that the Bright-Coy Commission Co. were to pay drafts drawn by John Hobson in favor of the Bank of Laddonia for the pur-

chase price of cattle purchased by said John Hobson, then the jury must find a verdict for the defendant.

"4. The court instructs the jury that although they may believe from the evidence that on the 9th day of June, 1906, at the special instance and request of John Hobson, plaintiff paid to one Bailey the sum of $2,250 as the purchase price of certain cattle, and that it was then and there agreed between the said Hobson and the plaintiff that said cattle were to be shipped to the defendant, Bright-Coy Commission Co. and by the said Bright-Coy Commission Co. sold and the proceeds thereof remitted to the plaintiff; although the jury may further find and believe from the evidence that the defendant had full knowledge of said arrangement between the said John Hobson and the said plaintiff; yet if they further find and believe from the evidence that at the time the said cattle were received by the defendant for sale, the said Hobson was indebted to the defendant, and the defendant sold the said cattle and applied so much of the proceeds thereof as would satisfy the said Hobson's indebtedness to the defendant, and remitted the balance of $374.63 to the said plaintiff to be placed to the credit of the said Hobson, then the jury must find a verdict for the defendant.

"5. The court instructs the jury that although they may believe from the evidence that the defendant John Hobson entered into an agreement under which the said John Hobson was to ship live stock to the defendant for the purpose of having same sold at the market, and that when so sold the defendant would pay the purchase price of the same to the Bank of Laddonia, plaintiff herein, and that relying upon the said agreement the plaintiff furnished to John Hobson the money with which to purchase the said stock on the 9th day of June, 1906; and if the jury further find and believe from the evidence that at the time of said agreement the said John Hobson was indebted to the defendant and that John Hobson shipped to the defend-

ant thirty-two steers on or about June 11, 1906, and the defendant sold the same and with the consent of the said John Hobson applied the proceeds thereof to the payment of the said John Hobson's indebtedness and remitted the sum over and above the said Hobson's indebtedness to the defendant, amounting to $374.63 to the said plaintiff bank, then the jury must find a verdict for the defendant.

"6.   Although the jury may believe from the evidence that Michael Bright, president of the Bright-Coy Commission Co., promised the officers of the plaintiff to accept and pay a draft drawn upon the Bright-Coy Commission Co. for the amount which John Hobson was required to pay for the cattle to be shipped on the 10th day of June, 1906, to the Bright-Coy Commission Co., yet if the jury further find and believe from the evidence that at the date of said promise the said John Hobson owed the defendant a sum of money amounting in the aggregate to the amount which said shipment of steers sold for; and if the jury further believe from the evidence that the said defendant applied the proceeds of the said sale to the payment of the said debt and remitted any surplus arising from the proceeds of said sale to the Bank of Laddonia to be placed to the credit of John Hobson, then you must find a verdict for the defendant."

The jury found a general verdict for $1,798.40 in plaintiff's favor and defendant appealed.

Perhaps we had better exhibit more fully the conflict in the evidence.   McCune, cashier for defendant, testified to a tripartite arrangement of the character recited, among the bank, Hobson and the defendant. Bright testified unequivocally defendant had no arrangement with the bank of Laddonia and none with Hobson, but simply sold the latter's cattle as they would sell any other customer's, and remitted the proceeds to plaintiff for him because he so ordered; that the proceeds of the Bailey cattle were applied by defendant in

discharge of a debt created by Hobson's overdrawing on defendant; that defendant had furnished Hobson a lot of money to buy and feed stock. Some correspondence between defendant and Hobson indicates defendant acted according to instructions given in each instance about the disposition of proceeds of the shipments.

"NATIONAL STOCK YARDS, ILL., Apr. 17, '06.
"Mr. John Hobson,
    "Laddonia, Mo.
    "Dear Sir: Inclosed you will find account of sale for your load of hogs sold today. As we had no instructions from you we presume these hogs are out of your feed lot and have placed the proceeds to your credit. If this is not the case, you can draw on us for the amount.          Yours truly,
        "BRIGHT-COY COMMISSION CO.

"NATIONAL STOCK YARDS, ILL., March 23, '06.
"Mr. John Hobson,
    "Laddonia, Mo.
    "Dear Sir: We paid your draft yesterday amounting to $254.35. We had no letter from you nor was there any notation on the draft to state what it was for. In order to keep our books straight you will kindly notify us when making drafts what they are drawn against, so that we can make the proper charge on our books. Did you get the rubber stamp I mailed you several weeks ago, and how does the agent like it? Hope your cattle are doing well.
        "Yours truly,
        "BRIGHT-COY COMMISSION CO.,
            "Per G. W. DOERR."

Torrison, assistant cashier of the bank, in a measure corroborated Bright, for the former said defendant notified the bank with every remittance from defendant

to the bank, to put the remittance to Hobson's credit, and this was done. The testimony of the secretary of defendant, though not so full as Bright's, agreed with it as far as it went. As to a special agreement regarding the Bailey cattle; there was no proof further than this: Bright told Hobson over the telephone to ship them to St. Louis instead of East St. Louis; Hobson said he would have to draw on defendant for money to pay for them, and Bright said: "All right." Hobson gave testimony contrary to McCune's as to there being a tripartite arrangement by which defendant pledged itself to plaintiff, either to honor drafts drawn on defendant in plaintiff's favor against Hobson's shipments of cattle or to remit the proceeds to plaintiff. The upshop of Hobson's testimony is that after his partnership with Cunningham was dissolved, he told McCune he (Hobson) wanted to continue the cattle business and McCune said that was all right, the bank would take care of him. Hobson testified the name of the Bright-Coy Commission Company was not mentioned in the conversations between him and McCune, and, further, that McCune never required a draft to be drawn in the bank's favor until long after Hobson had started in business for himself. According to Hobson, the transaction with reference to the Bailey cattle was without any special arrangement; he never had a conversation with plaintiff's officers in which anything was said about defendant furnishing money to pay for any cattle, except he might have said if the bank would not let him have the money he would draw a draft on defendant and thus pay the party from whom he bought; and there never was any agreement between him and McCune, or him and Bright with reference to paying drafts.

GOODE, J. (after stating the facts).—The verdict in this case should have been given on the separate counts, for though the first count may be taken as a broad statement of what is more particularly set forth

in the other two, the third declares on a cause of action distinct from that stated in the second. The latter declares on a general agreement between defendant and Hobson for Hobson to purchase stock from various persons, and ship them to defendant, which would, thereupon, pay the price of the stock to plaintiff; whereas the third count declares on a special agreement with reference to the Bailey cattle. Wherefore a general verdict was improper. [Brady v. Connelly, 52 Mo. 19; State to use v. Berning, 74 Mo. 87; Campbell v. King, 32 Mo. App. 38.] It is doubtful if the form of the verdict was as pointedly challenged as it should have been in the motion in arrest, which merely said the verdict was not responsive to the issues. Nevertheless, it is proper to call attention to the irregularity in the verdict, because this case cannot be understood or determined rightly, without reference to the diverse causes of action stated in the second and third counts of the petition and study of whether the evidence tends to support both causes. The first count is of a general nature, and while a verdict on it would stand if supported by proof of the substance of either the agreement stated in the second count or of that stated in the third, proof of one or the other would be essential to a recovery by plaintiff on any count. It is impossible to ascertain which agreement the jury found had been made, and this is an important matter; for the evidence tended to prove Hobson and defendant agreed specially as alleged in the third count, but not in the particulars therein alleged, with reference to the Bailey cattle, and the cattle were shipped pursuant to their agreement; but no evidence was adduced which tended to establish a general agreement between Hobson and defendant, that Hobson should buy cattle, ship them to defendant and the latter would pay the purchase price to plaintiff, or reliance on such an agreement by plaintiff in the transactions between it and Hobson, as alleged in the second count. What evidence there is of the particular con-

tract alleged in the third count, is the testimony of the bank's cashier McCune, that he heard Hobson say to Bright through the telephone he (Hobson) would have to draw on defendant for the price of the Bailey cattle and Bright, in response say: "All right."

The question occurs just here whether a verdict would stand on either the first or third counts, upon what facts were in testimony regarding the Bailey shipment. The answer to this inquiry depends on the adequacy of the telephone conversation between Hobson and Bright, to entitle plaintiff, in equity and good conscience, to recover the proceeds of the Bailey cattle as money had and received to its use. Counsel for both parties have treated this point as though it were controlled by our statutes requiring an acceptance of a bill of exchange to be in writing. [R. S. 1899, sec. 443; Neg. Inst. Law, sec. 132, 1 Mo. Ann. Stat., sec. 463; Clements v. Yeats, 69 Mo. 623; Flato v. Mulhall, 72 Mo. 522.] The draft was not an inland but a foreign bill of exchange. [Neg. Inst. Act., sec. 129; 1 Mo. Ann. Stat., sec. 463.] Hence we do not see that our statute cuts any figure, as the law of the place of performance of the agreement would govern, and that is Illinois. What the law of Illinois is in this respect was not proved, and the common law must furnish our rule of decision. At common law a breach of a verbal agreement to accept a bill of exchange when drawn, gives sufficient ground for an action against the promisor by the payee, if the latter relied on the promise in taking and discounting the draft. [2 Randolph, Com. Paper, secs. 604, 609, 613 and 614; Hall v. Bank, 133 Ill. 234; Brown v. Ambner, 66 M'd. 391; Ruiz v. Renauld, 100 N. Y. 256; Seaboard Bank v. Burleigh, 147; Bissell v. Lewis, 4 Mich. 450.] And the authority to be cited next, says there has been no statutory change in Illinois to require an acceptance, or agreement to accept, to be in writing. As to the point in hand, this case is identical in principle with Hall v. Cordell, 142

U. S. 116. In that case it appeared Hall Brothers & Company of Chicago, had agreed to accept and pay, or pay on presentation, all drafts made on them by George Farlow in favor of Cordell & Dunnica, for the price of live stock bought by Farlow and shipped by him to Hall Brothers & Company at the Union Stock Yards, Chicago. On July 13, 1886, Farlow shipped from Missouri nine carloads of cattle and one carload of hogs consigned to said firm, which received the shipment, sold the same for the account of Farlow, paid certain expenses and applied the balance of the proceeds in discharge of overdrafts Farlow had previously made on the firm and an indebtedness for money lent him. At the date of the shipment Farlow drew a draft at Marshall, Missouri, in favor of Cordell & Dunnica for $11,724 on Hall Brothers & Company, the draft stating it was for the nine carloads of cattle and one carload of hogs. This draft was discounted by Cordell & Dunnica, the proceeds placed to Farlow's credit in the bank, and Farlow drew checks on the account thus created in his name, in favor of the persons from whom he had purchased the stock. On presentation of the draft Hall Bros. & Company refused to pay it, it was protested and subsequently Cordell & Dunnica were paid a balance by Hall Brothers & Company of about $6,000 out of the proceeds of the stock, instead of being paid the full amount of the proceeds. An action of assumpsit was brought on the verbal agreement of Hall Brothers & Company to accept and pay all drafts Farlow might draw on them in favor of Cordell & Dunnica for shipments of stock, and the contract having been made in Missouri, the drawees contended it was invalid. The Supreme Court of the United States, pointed out the Supreme Court of Missouri had construed the statute of that State requiring the acceptance of bills of exchange to be in writing, to embrace not only an acceptance, but an agreement to accept; then said if the Missouri statute governed, no action could be main-

tained either on the agreement to accept or on the Missouri statute, which recognized the right of a person to whom a promise to accept a bill has been made, and who had drawn and negotiated the bill on the faith of the promise, to recover damages of the promisor if he refused to accept. [R. S. 1899, sec. 447.] The latter point was determined against the plaintiffs because they were the payees of the draft and it could not be held they had negotiated it in the meaning of said statute; and so it would be in the case at bar. But the Supreme Court of the United States declared that on principle and authority, the rights of the parties were not to be determined by the statute of Missouri, as said statute could have no application to a case brought to charge a person in Illinois upon a parol promise to accept and pay a bill of exchange in said State; declaring, further, the law of Illinois, that being the place of performance, should govern; and according to said law there was "no difficulty in holding the defendants were liable for a breach of their parol agreement, made in Missouri, to accept and pay, or pay upon presentation, in Illinois the bills drawn by Farlow pursuant to that agreement in favor of plaintiffs;" . . . since "in Illinois a parol acceptance, or a parol promise to accept, upon a sufficient consideration, a bill of exchange, was binding upon the acceptor." That was an action of assumpsit, but we hold an action for money had and received would lie on the facts we have here, for the proceeds of the Bailey shipment, as well as assumpsit on defendant's agreement to pay the draft drawn against the shipment. In discounting the draft plaintiff must have relied on defendant's promise to pay, and there was ample evidence to prove this element of recovery. An instruction hypothesizing the requisite facts in testimony regarding the agreement to honor the draft for the Bailey shipment, and telling the jury to return a verdict if they found the facts as stated, would have been correct. We overrule the error assigned for the

Bank v. Commission Co.

refusal of the court to grant the sixth instruction requested by defendant; and for the reasons given supra, and on the authority of the decision of the Supreme Court of the United States, we overrule the error assigned for the refusal of defendant's third request; inasmuch as a verbal agreement by defendant to accept any drafts drawn by Hobson in favor of plaintiff against shipments of cattle, would entitle plaintiff to redress if the agreement was not kept.

Where is the proof of a general agreement between Hobson and defendant of the nature stated in the second count; to-wit, for Hobson to buy stock, ship it to defendant and defendant to remit the proceeds to plaintiff? In repeated perusals of the record we have not been able to find a trace of evidence of that kind. On the contrary, the entire testimony for plaintiff goes to establish a contract made by McCune as plaintiff's cashier, with Bright, president of defendant company, and Hobson—a direct contract between the bank and defendant, and not one between Hobson and defendant on which the bank relied. Neither was there any testimony to support a contract of the latter character given by the witnesses for defendant; for they swore unequivocally the transaction in regard to Hobson's shipment of the cattle and the disposition of the proceeds, was not based on a particular arrangement of any species. If the contract stated in the second count had been proved, we think likely plaintiff might have maintained an action on it as one made for its benefit, since the cases now hold a third party may maintain an action on a contract entered into for his benefit, even though he was not named in it; if it was not merely for indemnity—that is, to save the obligee harmless in designated particulars—but to do affirmative acts like paying money. [Bank v. Leyser, 116 Mo. 51; State v. Railroad, 125 Mo. 596; Porter v. Woods, 138 Mo. 539; Crow v. Stinde, 156 Mo. 262.] If the agreement alleged in the second count had been established, then so far as

plaintiff's right to sue on it is concerned, it would appear to fall within the following exception to the rule that strangers to a contract cannot sue on it; to-wit, where property is placed in the hands of another person, who agrees to deliver the proceeds thereof to a third person, the latter has a cause of action against the one in whose hands the property was placed. [State v. Railroad, 125 Mo. loc. cit. 615.] And, we apprehend, in such an event the third party might sue the promisor for the proceeds of the property as money had and received to the plaintiff's use, instead of suing directly on the contract. Suffice to say there was no evidence of the agreement alleged in the second count, and the first and second instructions granted for plaintiff erred in leaving to the jury the question of whether such a contract had been formed. For the same reason the second instruction requested by defendant was right in theory, but to be precise, should exclude an agreement to pay drafts. Likely it was refused because it required a verdict for defendant, unless the jury believed defendant had agreed with plaintiff to pay for the cattle; but as all the evidence which tended to prove any agreement by defendant, tended to prove one with plaintiff and not with Hobson, the instruction fitted the proof.

The circumstance that defendant had habitually honored Hobson's drafts in favor of plaintiff or else had remitted the proceeds of shipments to plaintiff, knowing the latter had furnished money to pay for the cattle, would not bind defendant to turn over the proceeds of any particular shipment to plaintiff unless there was some agreement, general or special, to do so. That is to say, a commission merchant is not bound to send to a certain bank the proceeds of property he sells for a customer, merely because he knows said bank had been furnishing the customer money to buy the shipments and the proceeds had been remitted to the bank pursuant to the customer's order. The bank would not have a lien on a shipment or its proceeds unless a bill

of lading or some kind of security was taken. If defendant was bound by no engagement of any kind, then it was under no obligation to plaintiff; and the question of its right to retain the proceeds would be one between it and Hobson. Contra, if the defendant had agreed to remit the proceeds of shipments to plaintiff, or to honor drafts drawn against them, and plaintiff had acted on the agreement. [Bank v. Gordon, 45 Mo. App. 295.]

We hold no error was committed in refusing the fourth and fifth instructions asked by defendant, because each of them was too narrow in the facts hypothesized. They failed to take account of the evidence tending to establish a contract between defendant and plaintiff about the disposition of the proceeds of shipments.

The judgment is reversed and the cause remanded. All concur.